In re CLIFTON STEEL CORPORATION, Debtor-in-Possession.

ROLL FORM PRODUCTS, INC., Plaintiff-Respondent,

v.

CLIFTON STEEL CORPORATION, Debtor-in-Possession, Defendant.

No. 83–CV–871.

United States District Court, N.D. New York.

Nov. 8, 1983.

Wolfe Associates, Boston, Mass., for appellants; Lewis Lasher, Boston, Mass., of counsel.

McNamee, Lochner, Titus & Williams, P.C., Albany, N.Y., for plaintiff-respondent; Peter A. Pastore, Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

In this bankruptcy appeal brought pursuant to Bankr.Rule 8001, 11 U.S.C., appellants, Robert S. Wolfe and International Cars, Ltd., appeal from an April 28, 1983 order (superseding order of April 22, 1983) of Bankruptcy Judge Justin Mahoney. The order directs appellants and the debtor, Clifton Steel Corporation, to pay cash or to make certain property available to Roll Form Products, Inc. or be "deemed" in contempt of court. Appellants' application for a stay pending appeal was denied by this Court upon a finding that appellants would suffer no irreparable harm by complying with Judge Mahoney's April 28 order.

### II

The factual circumstances giving rise to this appeal essentially are undisputed. Clifton Steel Co. (hereinafter "Clifton"), the debtor in these proceedings, apparently became indebted to Roll Form Products, Inc. (hereinafter "RFP") in the sum of $120,000. Clifton's debt to RFP was secured, in part, by a recorded lien on a 1974 Jaguar V12 Roadster owned by Clifton.

Appellant Robert S. Wolfe is an attorney admitted to practice in both New York State and the Commonwealth of Massachusetts. His law office is located in Boston, and he presently represents both Clifton Steel and International Cars, Ltd. (hereinafter "ICL"), a Massachusetts corporation doing business within that state.

In April of 1982, Wolfe received a telephone call from his personal friend, Gregory Beeche, president of Clifton, indicating Beeche's desire to sell the Jaguar Roadster. Beeche informed Wolfe that the purchase price was $5,000 and that RFP had a lien on the car, but suggested that RFP probably would release its lien knowing that Clifton needed the cash to meet its payroll.

This information was conveyed by Wolfe to Donald J. van Vliet, president of ICL, who, on behalf of ICL, agreed to purchase

the roadster. Van Vliet then wired the necessary funds to Clifton,[1] and Beeche mailed the certificate of title to ICL in care of Wolfe. Wolfe's inspection of the document, however, revealed that RFP had not released its lien. Accordingly, Wolfe advised ICL to forestall sending its tow truck to take possession of the Jaguar.

On July 7, 1982, approximately three months after this transaction, Clifton filed a bankruptcy petition pursuant to Chapter 11 of the Bankruptcy Code of 1978. Subsequently, on September 28, 1982, RFP filed a complaint seeking relief from the automatic stay provisions of the Code. 11 U.S.C. § 362.[2] In that proceeding, RFP sought to foreclose its lien on the Jaguar owned by Clifton. Although neither Wolfe nor ICL was named in RFP's complaint, counsel for RFP did mail a copy of the complaint to Wolfe, and, according to Wolfe, that copy was received on December 6, 1982, one day before the hearing on RFP's request for relief from the automatic stay provisions.

Wolfe then telephoned Robert Biggerstaff, counsel for RFP, to discuss the scheduled hearing. It is Wolfe's contention that Biggerstaff agreed that "RFP would only seek to eliminate the rights of Clifton to the vehicle, not those of ICL. Moreover, RFP would provide ICL with a proposed order for review to ensure the preservation of ICL's rights." Brief for Appellants, p. 5; Ex.C to Wolfe Affidavit. Respondent's recollection of this phone conversation is that it was agreed only that RFP would make ICL's claim of title known to the Bankruptcy Court and that any order entered by that court would preserve whatever rights ICL

might have in the vehicle. In any event, Judge Mahoney's December 7, 1982 order modifying the automatic stay provisions includes the following language:

The automatic stay of 11 U.S.C. Section 362 is modified ... with respect to a certain 1974 Jaguar automobile ... to permit the foreclosure of [a] lien[ ] held by Roll Form Products, Inc. ... provided however, that International Cars, Ltd. reserves and retains all rights it may otherwise have to claim title to said automobile, to assert its rights in any action brought by Roll Form Products, Inc. to enforce its lien and to be made party to any such action, proceeding, sale or other disposition.

Order Modifying the Automatic Stay of 11 U.S.C. Section 362, ¶ 1; p. 2–3.

Notwithstanding the terms of this order, a copy of which was served on Wolfe (Respondent's Brief, p. 4), Wolfe advised ICL to take possession of the Jaguar. Accordingly, on March 17, 1983, without notifying RFP, ICL removed the Jaguar from the home of Beeche and transported it from New York State to Massachusetts. Only then did Wolfe inform RFP that the car had been relocated and that it would remain secure and insured, and would not be worked on pending resolution of the parties' conflicting claims.

In an attempt to gain possession of the car, RFP obtained an order from Judge Mahoney requiring Clifton, Beeche, Wolfe, and ICL to show cause why each of them should not be held in contempt of court;

---

1. Van Vliet inadvertently wired $7,000 to Clifton, but the $2,000 overpayment was returned.

2. 11 U.S.C. § 362 provides in part:
   (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

   .   .   .   .   .

   (3) any act to obtain possession of property of the estate or of property from the estate;
   (4) any act to create, perfect, or enforce any lien against property of the estate;

   .   .   .   .   .

   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
   (2) with respect to a stay of an act against property, if—
   (A) the debtor does not have an equity in such property; and
   (B) such property is not necessary to an effective reorganization....

directing each of them to comply with the court's December 7, 1982 Order; and directing them to deliver the Jaguar to RFP. Following a hearing in open court in March of 1983, in which Wolfe appeared pro se and on behalf of ICL, Judge Mahoney directed Wolfe or ICL to deliver the Jaguar or $5,000 to RFP or be "deemed" in contempt of court. It is from this order that Wolfe and ICL appeal. In this Court, appellants contend the Bankruptcy Court lacked subject matter jurisdiction; that appellants were denied due process of law; and that the contempt order "was not justified." Each of these contentions will be discussed seriatim.

### III

#### A. *Subject Matter Jurisdiction*

The parties herein do not dispute that the Bankruptcy Court can exercise subject matter jurisdiction over any property properly included in the debtor's estate. 11 U.S.C. § 541. The dispute here centers on whether the Jaguar Roadster properly was included in Clifton's estate following Clifton's filing of its Chapter 11 bankruptcy petition.

The Code provides in pertinent part that:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case* . . . .

11 U.S.C. § 541. (emphasis supplied).

■ The scope of this sweeping language is undeniably broad, and has prompted several commentators to conclude that a debtor's mere possessory interest in property is sufficient to bring such property into the estate created by virtue of § 541. *See, e.g.,* 4 L. King, M. Cook, R. D'Agostino & K.

Klee, *Collier on Bankruptcy,* § 541.08. *Cf. In re G.S.V.C. Restaurant Corp.,* 3 B.R. 491 (Bkrtcy.S.D.N.Y.1980) (tenant's mere possession of rented premises is part of § 541 estate notwithstanding landlord's obtaining warrant of eviction prior to bankrupt's filing petition); *contra In re Darwin,* 22 B.R. 259 (Bkrtcy.E.D.N.Y.1982). *See also In re Lane Foods,* 213 F.Supp. 133 (S.D.N.Y.1963) (although issuance of eviction warrant terminates the leasehold interest, bankruptcy court has *jurisdiction* to postpone eviction). (emphasis supplied). *Accord In re Huntington Ltd.,* 654 F.2d 578 (9th Cir.1981) (bankruptcy courts are essentially courts of equity and have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession). This Court agrees with the conclusions reached in *Lane* and *G.S.V.C.,* and finds that, since Clifton clearly was in possession of the Jaguar at the time it filed its Chapter 11 petition, the Bankruptcy Court had subject matter jurisdiction to determine that RFP should be permitted to foreclose its lien on the vehicle.[3]

Appellants' argument that the dispute over title to the Jaguar is now between "third parties" and, therefore, does not concern the debtor is without merit. The cases upon which appellants rely for this contention are distinguishable from the situation at bar. *See, e.g., First State Bank and Trust Co. of Guthrie, Oklahoma v. Sand Springs State Bank of Sand Springs, Oklahoma,* 528 F.2d 350 (10th Cir.1976); *In re Chase Manhattan Mortgage and Realty Trust,* 11 B.R. 982 (Bkrtcy.S.D.N.Y.1981). In none of them did the debtor retain possession of the disputed property. Moreover, here we are concerned with the propriety of appellants' disregard for the Bankruptcy Court order, not only the authority of that court to determine title to the vehicle. *Cf. Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 12 L.Ed.2d 1210 (1967)

---

**3.** This conclusion makes unnecessary a determination of the parties' contentions with respect to passage of title under the provisions of N.Y.U.C.C. § 2–401. Indeed, no factual determinations concerning the terms of the transaction entered by Clifton and ICL or the intent of these parties has been made by the court below. Accordingly, application of § 2–401 at this time to the instant proceedings is impossible.

(disobedience of injunction is punishable by contempt, notwithstanding injunction's questionable constitutionality).

### B. *Due Process Deprivation*

Appellants' due process claim has two prongs: inadequate notice of the Bankruptcy Court proceedings and insufficient contacts with the forum State of New York. Here, again, appellants miss the point.

■ There is no dispute that Wolfe received notice of the proposed December 7, 1982 hearing on RFP's request for relief from the automatic stay. Appellants claim, however, that one day's notice is insufficient, as a matter of law, for their interests to have been affected. While this contention is not entirely devoid of merit, it is without significance in the circumstances presented here. Wolfe requested neither an adjournment of the scheduled hearing nor permission to intervene in those proceedings, *see* Bankr.Rule 2018, 11 U.S.C. Certainly, the notice afforded Wolfe was sufficient to enable him to exercise either of these options. *Cf. Matter of Carter,* 16 B.R. 481, 483 (D.C.W.D.Mo.1981) (creditor's counsel's receipt by telephone of notice of automatic stay is sufficient to hold counsel in contempt for creditor's subsequent eviction of debtor). *See also* Fed.R.Civ.P. 65(d) (every order granting injunction is binding upon parties to proceeding and those persons with actual knowledge of order or acting in concert with parties). Having received actual knowledge of the December 7th proceedings and the order granted therein, it was incumbent upon appellants to seek in the Bankruptcy Court a modification of the order or to abide by its terms.

■ With respect to personal jurisdiction, appellants cannot claim now to have had insufficient contacts with the State of New York from which the Bankruptcy Court could compel them to return the Jaguar after appellants had entered the State surreptitiously to remove the vehicle. Stated simply and in familiar terms, subjecting appellants to the jurisdiction of the Bankruptcy Court under these circumstances does not offend our "traditional notions of fair play and substantial justice." *Interna-*

*tional Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1941)); *see Matter of Reiber's Inn of Westchester, Inc.,* 1 B.R. 304 (Bkrtcy.S.D.N.Y.1979) (bankruptcy court has jurisdiction to require an entity that removes property which was in custodia legis after commencement of case to return such improperly seized property).

### C. *Justifiability of Contempt Order*

■ Appellants' final ground in support of this appeal is that the Bankruptcy Court's contempt order was not justified. Appellants contend that " '[i]n order to hold a person in contempt, we must find that (a) there was a 'specific and definite' order of the court that the person has violated, and (b) the person had actual knowledge of that order.' " Appellants' Brief, p. 14. (quoting *In re ABT,* 2 B.R. 323, 325 (Bkrtcy.E.D.Pa. 1980)). With this general statement, this Court does not disagree. However, this Court finds incredible any assertion that the stated prerequisites for a finding of contempt are not satisfied here. As indicated above, appellants received actual notice of the proceedings giving rise to the order permitting RFP to proceed against the Jaguar, and this Court finds that order to be a "specific and definite" order which appellants were not free to disregard.

Appellants' remaining contention that the sanctions imposed by the Bankruptcy Court are excessive is frivolous. The April 28 order requiring appellants to deliver $5,000 or the Jaguar to RFP imposed no sanctions on appellants. Indeed, sanctions have not been imposed yet by the Bankruptcy Court. The $5,000 figure represents only the purported value of the Jaguar. The propriety and extent of sanctions, if any, to be imposed in this case, however, will be determined, in the first instance, by the Bankruptcy Court.

### IV

For the foregoing reasons, the April 28 order of the Bankruptcy Court is affirmed

in all respects, and this matter is remanded to the Bankruptcy Court for further proceedings.