IN re SNIDER FARMS, INC., Debtor.

Bankruptcy No. 87–60512.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division, at Gary.

March 8, 1991.

See also 83 B.R. 1003.

Gordon E. Gouveia, Gouveia & Miller, Merrillville, Ind., for debtor.

David M. Powlen, Barnes & Thornburg, Indianapolis, Ind., for Equitable Life Ins.

Paul R. Chael, Kouts, Ind., trustee.

Kenneth C. Meeker, South Bend, Ind., U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

KENT LINDQUIST, Chief Judge.

## I

### Statement of Proceedings [1]

This Chapter 12 case came before the Court on March 7, 1991 on Motion by the Chapter 12 trustee filed on February 19, 1991, for David Snider, as chief executive officer (hereinafter: "Respondent") of the Chapter 12 Debtor Snider Farms, Inc. (hereinafter: "Debtor"), to show cause why he should not be held in civil contempt of court for violation of certain orders of this Court.

Trustee Chael appears *pro se.*

Debtor and Respondent appear by Attorney Gouveia.

Submitted. Evidence and arguments heard.

## II

### Findings of Fact

■ The Court takes judicial notice of the record in the main case. On August 4, 1990 at a status conference at which the Respondent was personally present, the following docket entry order was made on that same date:

DOCKET ENTRY: Status Conference held on Motion for Equitable to Show Cause by DIP. Debtor appears by counsel. Equitable appears by counsel. The parties stipulate as follows: In lieu of state receiver, *Debtor shall harvest subject crops in normal course* and *deposit proceeds in Atty. Gouveia's trust account or in the Clerk's Registry instanter.* Proceeds to be so held until Court decides who has right to crop proceeds. Debtor to plant no further crops lease property or commit waste without further order of Court. SO ORDERED. Atty. for Equitable to submit separate Order. CC: David Powlen, Gordon Gouveia and *David Snider on behalf of Snider Farms* and Paul Chael. (Emphasis supplied).

The Respondent was personally advised and instructed by all parties concerned, and by the Court as to precisely what was to be done with the proceeds of the 1990 crop growing upon the Debtor's real estate upon which Equitable Life had a mortgage, and the Respondent orally acknowledged his understanding thereof, and his agreement thereto.

In addition, the Court takes judicial notice that pursuant to the above docket entry the following Order was entered by separate document on August 21, 1990. This Order in its relevant part provided as follows:

And the Court, having heard the preliminary statements and arguments of counsel for the Debtor and counsel for Equitable, and being otherwise duly advised, finds that a genuine dispute exists as to whether or not Equitable has a claim to or other interest in the crops (the "Crops") presently growing on the real estate and accordingly whether or not the crops or proceeds thereof should be turned over or paid to Equitable in partial payment of its claim against the Debtor. After the prehearing conference, the parties, *including David E. Snider personally and as President of the Debtor, agreed and stipulated to the following entry.* Accordingly, it is

ORDERED, ADJUDGED, AND DECREED that:

\* \* \* \* \* \*

(III) The *Debtor shall harvest the Crops and deposit all gross proceeds of any sale or other disposition thereof in a trust account maintained by the Debtor's attorney Gordon E. Gouveia or in the registry of the Clerk of the Bankruptcy Court,* and such proceeds shall be held subject to further order of the Bankruptcy Court as to the disbursement and payment thereof after a determination has been made regarding Equitable's claim to or interest in the Crops.

\* \* \* \* \* \*

August 20, 1990

KENT LINDQUIST
United States Bankruptcy Judge

---

1. This order constitutes the Court's Findings of Fact and Conclusions of law pursuant to Fed.R.Civ.P. 52 as made applicable by Bankruptcy Rules 9014 and 7052.

DIP
*Snider Farms, Inc.*
*133 West 150th South*
*Valparaiso, In 46383*
 (Emphasis supplied).

The Respondent testified as follows:

1. That he did in fact harvest the 1990 crop in question, and sold the same to Cargill for approximately $52,000.00; that because Cargill had a valid post petition lien on said crop and the proceeds pursuant to Court Order, Cargill retained approximately $38,000.00 of the proceeds to satisfy its lien, and made a check payable to the Debtor, and Ansler Seeds as co-payees for $12,675.00 as to the surplus.

2. That he obtained the endorsement of the Cargill check from Ansler Seeds and deposited the $12,675.00 in the Debtor's checking account on October 24, 1990, over which he exercised dominion and control.

3. That instead of paying said monies into Attorney Gouveia's trust account, or into the registry of the Clerk, as expressly ordered by the Court, he used the monies to buy seed corn.

4. That the Respondent admitted he was present at the status conference held August 4, 1990, and was advised as to what he was to do with the proceeds of the 1990 crop in question, but denied he ever received copies of the docket entry order of August 4, 1990, and the order issued on a separate document and entered on August 21, 1990. The Respondent asserts he changed his mailing address some two years ago, but never advised the Clerk of the Court.

### III

*Conclusions of Law and Discussion*

No objection was made by counsel to the jurisdiction of this Court as to this matter, the Court finds jurisdiction to be present, and that this contested matter is a core proceeding pursuant to 28 U.S.C. § 157. *In re Walters,* 868 F.2d 665, 669 (4th Cir.

1989); *Budget Service Company v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292 (4th Cir.1986).

The Bankruptcy Court, pursuant to 11 U.S.C. § 105, as amended, has the statutory power to enter final civil contempt orders. *In re Walters,* 868 F.2d 665, 669–70 & n. 3 (4th Cir.1989). *Accord, Kellogg v. Chester,* 71 B.R. 36, 37–39 (N.D.Tex. 1987); *In re Stephen W. Grosse, P.C.,* 84 B.R. 377, 385–88 (Bankr.E.D.Pa.1988); *In re Haddad,* 68 B.R. 944, 947–49 (Bankr.D. Minn.1987).

■ In order to find a creditor in contempt of court for violation of an order of the court, it must be shown that the respondent had either official or actual knowledge of the court order. *In re De Jesus Suez,* 721 F.2d 848, 853 (1st Cir. 1983); *In re Smith Corset Shop, Inc.,* 696 F.2d 971, 977 N. 7 (1st Cir.1982); *Matter of Hailey,* 621 F.2d 169, 172 (5th Cir.1980); *Haile v. New York State Higher Education Service Corp.,* 90 B.R. 51, 55 (W.D. N.Y.1988); *In re Skinner,* 90 B.R. 470, 479–80 (D.Utah 1988); *In re Calender,* 89 B.R. 280, 282–83 (Bankr.D.Columbia 1988); *Matter of Carter,* 16 B.R. 481, 483 (W.D. Mo.1981), *aff'd.* 691 F.2d 390, 391–92; *In re Clifton Steel Corp.,* 35 B.R. 732, 736 (N.D. N.Y.1983); *In re Edwards,* 5 B.R. 663, 665 (Bankr.M.D.Ala.1980); *Matter of Holland,* 21 B.R. 681, 689 (Bankr.N.D.Ind.1982); *In re Waters,* 22 B.R. 387, 388 (Bankr.N.D. Tex.1982).

■ Upon a finding of contempt of court for violation of an order of court, the court may award damages to compensate for actual loss suffered. *In re Computer Communications,* 824 F.2d 725, 731 (9th Cir. 1987); *In re Littke,* 105 B.R. 905, 911 (Bankr.N.D.Ind.1989). This includes costs and attorney's fees. *In re Skinner,* 90 B.R. 470, 474 (D.Utah), *citing, Commodity Futures Trading Commission v. Premex,* 655 F.2d 779, 785 (7th Cir.1981). *In re Crabtree,* 39 B.R. 702, 711 (Bankr.E.D. Tenn.1984); *In re Ashby,* 36 B.R. 976, 978 (Bankr.D.Utah 1984); *Matter of DePoy,* 29 B.R. 471, 480 (Bankr.N.D.Ind.1983). The purpose is to restore the parties to their

precontempt position. *In re 2218 Bluebird Ltd. Partnership,* 41 B.R. 540, 545 (Bankr. S.D.Cal.1984).

■ It should be noted that neither the Bankruptcy Court nor the District Court can properly assess *punitive* damages for *civil* contempt of court for the violation of an order of the court.

Civil contempt orders serve either or both of two purposes: (1) to compel or coerce obedience to a court order; (2) to compensate the parties for losses resulting from the contemner's non-compliance with a court order. *United States v. United States Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947).

■ The distinction between criminal and civil contempt is the nature of the relief asked, and the purpose of that relief, and while a penalty for criminal contempt is intended to be punitive only, sanctions for civil contempt are employed either to coerce compliance with the Court's order or to compensate the complainant for losses sustained. *Shakman v. Democratic Organization of Cook County,* 533 F.2d 344 (7th Cir.), *cert. den.* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

■ Sanctions for civil contempt must be wholly remedial; a definite fine which is neither compensatory nor conditioned on future violations of the Court's order is punitive and can only be imposed in a criminal contempt proceeding. *United States v. Professional Air Controllers Organization (PATCO), PATCO Local 202,* 678 F.2d 1 (1st Cir.1982). *See e.g., S.E.C. v. Simpson,* 885 F.2d 390, 395 (7th Cir.1989), *citing, Hicks v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).

■ In civil contempt, the moving party must prove his case by clear and convincing evidence, rather than by the usual standard of preponderance of the evidence. *Stotler v. Able,* 870 F.2d 1158, 1163 (7th Cir.1989); *In re Hardy,* 39 B.R. 64, 66 (Bankr.E.D.Pa.1984), *citing, Quinter v. Volkswagen of America,* 676 F.2d 969, 974 (3rd Cir.1982); *Fox v. Capital Co.,* 96 F.2d 684, 686 (3rd Cir.1938). *See also, U.S. v. Roberts,* 858 F.2d 698 (11th Cir.1988). However, once the petitioner makes a prima facie showing of a violation, the burden shifts to alleged contemnor to produce detailed evidence specifying why he cannot comply. *Id.*

■ Since civil contempt serves a remedial purpose by either coercing a respondent into compliance with the Court's Order or compensating the complainant for losses sustained, willfulness of the offending party need not be shown for a finding of contempt; it is sufficient that the Court order violated is specific and definite and that the offending party has knowledge of the Court's order. *In re Skinner,* 90 B.R. 470, 474 (D.Utah 1988), *citing, McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). *In re Lohnes,* 26 B.R. 593, 596 (Bankr.D.Conn. 1983); *In re Demp,* 23 B.R. 239, 240 (Bankr.E.D.Pa.1982). That is to say willfulness is not an essential element of civil contempt. *In re Crabtree,* 39 B.R. 702, 710 (Bankr.E.D.Tenn.1984); *In re Ashby,* 36 B.R. 976, 978 (Bankr.D.Utah 1984). Civil contempt may be established even though the failure to comply with the court order was unintentional, and done with good intentions. *Perry v. D. Donnell,* 759 F.2d 702, 705 (9th Cir.1985), *citing, Commodity Futures Trading Commission v. Premex,* 655 F.2d 779, 784 (7th Cir.1981). A party may be found in civil contempt if he has not been "reasonably diligent and energetic in attempting to accomplish what was ordered," *Stotler v. Able,* 870 F.2d at 1163, *supra, quoting, American Fletcher Mortgage Co. v. Bass,* 688 F.2d 513, 517 (7th Cir.1982). Orders of the Courts must be complied with and an appeal is the remedy for a decision believed to be erroneous. Thus, good faith alone does not immunize a party from a civil contempt sanction for noncompliance with a Court order. *McLean v. Central State, etc.,* 762 F.2d 1204, 1210 (4th Cir.1985). Accidental, inadvertent or negligent conduct can be grounds for imposing civil contempt sanctions. *In re Shafer,* 63 B.R. 194, 198 (Bankr.D.Kan. 1986).

■ The Respondent cannot use as a defense that he acted on the advice of counsel. *In re Taylor*, 884 F.2d 478, 483 (9th Cir.1989); *Matter of DePoy*, 29 B.R. 471, 476 (Bankr.N.D.Ind.1983). *See*, 21 Am.Jur.2d, *Contempt*, § 163.

■ Here, the Respondent was fully appraised by express verbal instructions at the status conference held on August 4, 1990 as to what to do with the crop proceeds in question. This actual notice was sufficient, even if official notice of the order was not received by the Respondent as asserted by him.

■ In addition, the record reveals that the docket entry order of August 4, 1990, and the order on a separate document entered on August 21, 1990 were shown as being distributed by the Clerk to the Respondent and Debtor's counsel of which the Respondent was the chief executive officer. A party is considered to have "notice of all facts, notice of which can be charged upon the attorney". *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 633–34 (7th Cir. 1986), *citing, Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). It is well established that notice or knowledge by an attorney acquired during the time he is acting within the scope of his employment is imputed to his client. 7 Am.Jur.2d *Attorneys at Law*, § 136.

A review of the jacket and docket in the main case reveals that none of the orders shown as being distributed by the Clerk to the Debtor or the Respondent were returned. There is thus a rebuttable presumption that the Respondent received these orders. *See e.g., In re Longardner & Associates, Inc.*, 855 F.2d 455, 459–60 (7th Cir.1988).

The fact that the Respondent changed his address is of no assistance to the Respondent. The Respondent, as agent for the Debtor, is required to inform the Clerk of any change in his or the Debtor's address, and he did not do so. In addition, Bankr.R. 9022 regarding Notice of a Judgment or Order provides that the Clerk shall serve notice of the entry in the manner provided by Bankr.R. 7005. Bankruptcy

Rule 7005 adopts Fed.R.Civ.P. 5(b), which provides that service may be made upon the attorney or the party at the attorney's office or party's last known address. This was done by the Clerk in this case.

In any event, the Respondent was clearly orally instructed by all parties at the status conference on August 4, 1990, as to exactly what he was to do with the proceeds of the 1990 crop in question.

The Trustee has shown by clear and convincing evidence:

1. That two valid orders which were specific and definite were entered as to what the Respondent was to do with the proceeds of the 1990 crop.
2. That the Respondent had notice thereof.
3. That notwithstanding that fact, the Respondent violated said orders without justification or excuse.

As noted above, in the Court's discussion of the law, the Trustee need not show willful or intentional disobedience of the Court's orders, or lack of good faith by the Respondent—only that the Respondent had knowledge of the orders, and he violated the same. This the Trustee has clearly shown, and the Court finds the Respondent in civil contempt of this Court for knowingly violating the orders of this court.

Because the Trustee is seeking civil contempt, any sanctions must be remedial or curative, rather then punitive. In addition, the Respondent must be given an opportunity to purge himself of civil contempt of court.

■ Thus, the Court concludes that a compensatory civil fine in the net amount that the Respondent received from Cargill, and did not pay into his attorney's trust account, or the Clerk's registry, should be assessed versus the Respondent in the principal sum of $12,675.00, plus interest. This is the amount that the Debtor's estate has been damaged by the Respondent's violation of the orders of this court, and thus is remedial in nature and not punitive. The interest on the $12,675.00 in principal shall accrue at the one year Treasury Bill rate in

effect at the time the Respondent deposited the $12,675.00 in the Debtor's bank account on October 24, 1990 instead of complying with the Court's orders as to these monies. The one year Treasury Bill's interest rate in effect on October 24, 1990 was 7.25%.[2]

Because the Trustee was *pro se,* no attorneys' fees shall be assessed versus the Respondent.

The Respondent may purge himself of this civil contempt order by paying Chapter 12 Trustee of the Debtor, Paul Chael, the principal sum of $12,675.00, plus 7.25% interest accruing from October 24, 1990 on or before the 8th day of April, 1991. Said monies are to be distributed by Trustee to the Debtors' creditors pursuant to the Debtor's amended plan as confirmed by this Court.

 The Court would also note that although the Respondent is not the entity who was ordered to comply with the Court's order, i.e. it was the corporate Chapter 12 debtor, the Respondent, as responsible executive officer of the Debtor and legally identified with it, can be held in contempt, because the Debtor failed to comply with the Court's orders. *Stotler and Company v. Able,* 870 F.2d 1158 at 1164, *supra. See,* 17 Am.Jur.2d *Contempt,* § 61 where it is stated as follows:

At common law, a corporation could not be punished for contempt. The modern rule, however, is that the corporate cloak affords no protection to contempt proceedings, and a corporation may be punished for contempt in disobeying judgments, decrees, or orders of a court made in a case within its jurisdiction. A municipal corporation may be punished for contempt the same as any other corporation for violating an injunction, the violation of which interferes with, impairs, or restricts the rights of an individual. The process of sequestration may be ordered and a fine imposed and collected in the usual way.

A command to a corporation is, in effect, a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the order directed to the corporation, prevent compliance, or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt.

\*　　\*　　\*　　\*　　\*　　\*

An officer of a corporation who participates in the disobedience of a court mandate is punishable for contempt provided he has been made a party to the contumacious conduct and due notice has been given to him. Conversely, the president of a corporation cannot be convicted for contempt where it is not established that he had individually violated the injunction against him and the corporation, or authorized any violation by employees of the corporation, or had knowledge of such acts.

\*　　\*　　\*　　\*　　\*　　\*

Since a corporation can only act through individuals, a corporation enjoined from doing certain acts may be held liable for the acts of its employees who violated the injunction. (Footnotes omitted).

*See also, Id.* § 63, and Fed.R.Civ.P. 71 as made applicable by Bankr.R. 7071.

It is therefore,

ORDERED, ADJUDGED, AND DECREED, that the Respondent is in civil contempt of this Court for knowingly violating the Court's docket entry order of August 4, 1990 and its order of August 21, 1990. And it is further,

ORDERED, ADJUDGED, AND DECREED, that the Respondent may purge himself of civil contempt by paying remedial damages to the trustee, for and on behalf of the creditors of the Debtor, in the principal sum of $12,675.00, plus interest thereon from October 24, 1990 at the rate of 7.25% per annum on or before April 8th, 1991.

---

**2.** The court takes judicial notice of Federal Reserve Statistical Release H15 (519) released October 22, 1990, which reflects that the one year Treasury Bill interest rate at that time was 7.25%.

The Clerk shall enter this Order on a separate document pursuant to Bankr.R. 9021.

The Clerk shall forthwith serve a copy of this order on the Respondent pursuant to Bankr.R. 9020, and this order shall become effective 10 days after service thereof, unless within the 10 day period the Respondent serves and files with the Clerk objections prepared in the manner provided in Bankr.R. 9033(b).

SO ORDERED.