In re Michael E. CARRICO, Debtor.

Bankruptcy No. 95–53937.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Feb. 5, 1997.

Patrick A.T. West, Columbus, OH, for debtor.

Myron N. Terlecky, Chapter 7 Trustee, Columbus, OH.

Alexander G. Barkan, Assistant United States Trustee, Columbus, OH.

Sally Carrico–Baum, Columbus, OH.

Daniel R. Swetnam, Schottenstein, Zox & Dunn, Columbus, OH.

Grady L. Pettigrew, Jr., Arter & Hadden, Columbus, OH.

Gina M. Dougherty, Columbus, OH.

Danny W. Bank, Columbus, OH.

Max Kravitz, Columbus, OH.

Mark M. Flanagan, Westerville, OH.

J. Gary Coffman, Teaford, Rich, Coffman & Wheeler, Columbus, OH.

Geoffrey Stern, Ohio Supreme Court Disciplinary Counsel, Columbus, OH.

Steven C. Bahls, Dean, Capital University Law and Graduate Center, Columbus, OH.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Order details a civil contempt proceeding against Michael E. Carrico ("Debtor"), attorney Patrick A.T. West ("Mr. West"), attorney Gina M. Dougherty ("Ms. Dougherty"), attorney Danny W. Bank ("Mr. Bank"), and Antonio J. Ornelas ("Mr. Ornelas"). This Opinion describes the Debtor's transfer of an estate asset, two attorneys' disregard for the Court's specific instructions to return an estate asset to the Chapter 7 Trustee, Myron N. Terlecky ("Trustee"), and yet another attorney's actions that interfered with the Court's efforts to have the estate asset returned.

One oral ruling and three written orders were issued by this Court in an effort to obtain basic compliance with the bankruptcy laws: (1) an oral ruling issued on January 31, 1996, ("Oral Ruling"); (2) an Order on Motion for Authorization to Obtain Credit entered on January 31, 1996, ("First Order"); (3) an Order to Show Cause for Civil Contempt Pursuant to FRBP 9020(b) entered on February 1, 1996, ("Second Order"); and (4) an Order Scheduling Continued Hearing on Order to Show Cause for Civil Contempt Pursuant to FRBP 9020(b) entered on February 27, 1996, ("Third Order").

While this Court is aware of the serious nature of imposing sanctions for civil contempt, the egregious behavior of the Debtor and three officers of the Court merit such measures. Based upon a review of the arguments of counsel, supporting affidavits, exhibits and the entire record in this case, the Court finds the Debtor, Mr. West, Ms. Dougherty, and Mr. Bank in civil contempt. The history of the Debtor's involvement in the bankruptcy process and the actions of all the subjects of this Memorandum Opinion and Order are described in considerable detail, to aid their understanding of the Court's conclusion and the consequences of their actions.

On July 17, 1995, attorney Mark M. Flanagan ("Mr. Flanagan") filed the instant Chapter 13 petition on behalf of the Debtor, and at the October 16, 1995, confirmation hearing notified the Court of his client's intention to convert the case to Chapter 7. On November 1, 1995, Mr. West filed a Notice of Substitution of Counsel and a Notice of Conversion to Chapter 7, and on November 21, 1995, the Trustee was appointed. On December 18, 1995, the Debtor did not appear at the scheduled Meeting of Creditors; however, Mr. West and Sally Carrico–Baum ("Ms. Baum") appeared. Ms. Baum is the mother and a creditor of the Debtor, and has a power of attorney for the Debtor.

In early January 1996, the Debtor entered into a contract for the sale of a D–6 liquor

license from his defunct restaurant, The Clock, with Mr. Ornelas, president of Corona, Incorporated ("Corona"). On January 19, 1996, Mr. Bank, attorney for Corona, gave Ms. Dougherty, liquor license attorney for the Debtor, $16,230.00 in escrow to complete the sale. On January 23, 1996, Ms. Dougherty advanced $1,820.00 from her trust account to the Ohio Department of Liquor Control to renew the license so it could be sold.

As a result of Mr. West and Ms. Dougherty's January 26, 1996, conversation regarding the transaction, Ms. Dougherty sent Mr. West a facsimile of the purchase agreement between the Debtor and Corona. This conversation with Ms. Dougherty and subsequent facsimile evidences Mr. West's first involvement with the purchase agreement, and Ms. Dougherty testified it was her first knowledge the Debtor had filed the present bankruptcy petition.[1] On January 26, 1996, at 5:15 p.m., Mr. West sent the Trustee a facsimile of the purchase agreement.

On January 29, 1996, the Trustee delivered a letter to Ms. Dougherty advising her the Debtor did not have the authority to sell the liquor license because it constituted property of the estate under control of the Trustee. The letter stated an expedited hearing would be held, "on January 31, 1996, in an effort to obtain post-petition financing pursuant to 11 U.S.C. § 364 in order to pay the filing fee to renew the license. I [the Trustee] ... would very much appreciate you advising me to [sic] the status of these matters as soon as possible. In the event funds have been deposited into your trust account, **I am putting you on notice not to disburse the funds."** (emphasis added).

On January 31, 1996, at 9:30 a.m., the Court conducted an expedited hearing on the Trustee's Motion for Authorization to Obtain Credit. The Debtor, Mr. West, the Trustee, and Daniel R. Swetnam, counsel for High Street Bistro, Inc., the entity that was going to loan funds for the license renewal, were present. During the hearing, the Trustee informed the Court that Ms. Dougherty held

proceeds from the liquor license that had been sold without his knowledge and without prior Court authorization. At the conclusion of the hearing, the Court issued the Oral Ruling that required Ms. Dougherty to turn over all proceeds by January 31, 1996, at 5:00 p.m. and established a show cause hearing for civil contempt on February 1, 1996, in the event of noncompliance. The Court instructed the Trustee to prepare an order memorializing its Oral Ruling.

Shortly after the 9:30 a.m. hearing on January 31, 1996, Mr. West and the Debtor went to Ms. Dougherty's office, and Mr. West informed her a hearing had been held where the Court determined the liquor license was an asset of the bankruptcy estate and prior Court approval was necessary for its transfer. Ms. Dougherty testified Mr. West did not inform her of the Oral Ruling requiring the turnover of the sale proceeds to the Trustee. Mr. West and the Debtor left Ms. Dougherty's office, and Mr. West went to Mr. Bank's office. Mr. Bank testified Mr. West informed him about the hearing, explained the liquor license was property of the estate and claimed the Debtor had committed a fraud on Corona by entering into a purchase agreement without obtaining prior Court approval. Mr. Bank testified he lacked knowledge of the Debtor's pending bankruptcy until Mr. West's post-hearing contact on January 31, 1996. After Mr. West left, Mr. Bank called Ms. Dougherty to notify her of Corona's decision to rescind the contract and retrieve the funds held in escrow by Ms. Dougherty.

On January 31, 1996, at approximately 12:20 p.m., the Trustee delivered a letter and an unsigned, courtesy copy of the First Order to Ms. Dougherty. The cover letter advised her of the Trustee's intention to submit the attached proposed First Order as required by the Court, requested she allot time for the transfer of the sale proceeds to the Trustee, and referred to the January 31, 1996, hearing where the Oral Ruling originat-

---

1. A review of Court records reveals a prior chapter 13 proceeding during which the Debtor, represented by Ms. Dougherty as liquor license counsel, sold another liquor license without Court approval. The sale proceeds were for-

warded to the Office of the Chapter 13 Trustee. The case was dismissed, and the sale proceeds along with funds that had been paid into the plan were forwarded to the Franklin County Common Pleas Court.

ed.[2]  At 1:27 p.m., the Trustee submitted the First Order to the Court for its consideration.  The Court immediately signed the First Order that provided in pertinent part:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Gina M. Dougherty, counsel for Corona, Inc., [sic] shall turn over all proceeds resulting from the sale of the liquor license to the Trustee, no later than 5:00 p.m. on January 31, 1996.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if counsel for Corona, Inc., fails to turn over all proceeds from the sale of the liquor license by the date and time specified above, counsel for Corona, Inc. shall appear before the United States Bankruptcy Court, 170 North High Street, Columbus, Ohio 43215, Courtroom B, on **February 1, 1996, at 9:30 a.m.** and show cause why counsel should not be held in contempt.  (emphasis in the original).

Around 2:30 p.m. on January 31, 1996, Mr. Bank arrived at Ms. Dougherty's office to deliver a written rescission of the contract. Ms. Dougherty and Mr. Bank testified that at this meeting they were in possession of the unsigned, courtesy copy of the First Order.  At approximately the same time Ms. Dougherty and Mr. Bank were meeting to rescind the contract, the Trustee stated he delivered a signed, certified copy of the First Order along with another cover letter to Ms. Dougherty's office.[3]  Ms. Dougherty testified she did not receive this signed, certified copy until noon, February 1, 1996.

Even though Ms. Dougherty knew the First Order was being submitted to the Court, she ignored the First Order's instructions and Oral Ruling that required the turnover of proceeds to the Trustee.  Instead,

she wrote a check from her trust account to Mr. Bank and Corona for $16,130.00.  Mr. Bank requested issuance of another check where he was the sole drawee so the funds could be immediately deposited into his trust account.  Ms. Dougherty complied, and Mr. Bank deposited the $16,130.00 into his trust account.  Later in the afternoon of January 31, 1996, Ms. Dougherty informed Mr. West that Mr. Bank had rescinded the contract, and that she returned the escrow funds.  As of January 31, 1996, at 5:00 p.m., the sale proceeds were not turned over to the Trustee, contrary to the Oral Ruling and the First Order, but were in Mr. Bank's possession.

Ms. Dougherty testified she disregarded the instructions of the Oral Ruling and the First Order because she was incorrectly identified as counsel for Corona, the First Order in her possession was not signed, and she "didn't believe there was an order in effect at this moment, because there was not a valid sale of anything."  Although Ms. Dougherty testified her ethical obligation to protect the Debtor's property interest was a driving motivation behind transferring the escrow funds to Mr. Bank, she never informed her client, the Debtor, of her intention to rescind the contract and return the funds.

Mr. Bank testified he disregarded the instructions of the Oral Ruling and the First Order because the attorneys were inaccurately identified, the First Order he saw was not journalized, and the contract was voidable because of a mutual mistake between the parties.  Mr. Bank testified that the lack of authority by the Debtor to sell the license made the contract void from its inception, and even though he "was aware that there was a hearing" during the time he received the escrow funds, he "was not aware of an

---

2.  The letter stated the following: "As a professional courtesy, enclosed is a copy of the Order that is being submitted to the Bankruptcy Court. The Order is being submitted **in compliance with the Court's directive given at ·the close of the hearing today** on the Trustee's Motion for Authorization to Obtain Credit and Request for Expedited Hearing.... Please contact me or Mark Iannotta at your earliest convenience to arrange transfer of the proceeds from the sale of the liquor license **before 5:00 p.m. today.**" (emphasis added).

3.  The letter stated the following: "Judge Caldwell expressed great concern over the fact that you [Ms. Dougherty] were holding the proceeds.... [T]he liquor license is property of the bankruptcy estate.... [I]t is my understanding that the proceeds from the liquor license are in your possession.  Please have these funds delivered to my office by 5:00 p.m. today so we might both avoid the show cause hearing ... for February 1, 1996...."

order being in effect at that time." Mr. Bank claimed his ethical obligation to preserve the integrity of his client's funds was the reason he insisted on returning the sale proceeds to his trust account, rather than turning over the funds to the Trustee, as mandated by the Oral Ruling and First Order.

On February 1, 1996, at 9:08 a.m., the Court faxed Ms. Dougherty a signed copy of the First Order to ensure she had notice, and on February 1, 1996, at 9:30 a.m., the Court conducted a hearing to determine the status of compliance with the First Order. The Trustee, being the only party in attendance, notified the Court that Ms. Dougherty had transferred the funds to Mr. Bank. Ms. Dougherty stated she did not attend the February 1, 1996, hearing because she believed Mr. West was dealing with the issue, she did not receive an "official" copy of the First Order until noon on February 1, 1996, and she was experiencing major plumbing problems with the toilets in her home. Mr. Bank, Mr. West, and the Debtor failed to explain why they were absent.

At the conclusion of the February 1, 1996, hearing, the Court entered the Second Order that provided in relevant part:

> Pursuant to § 541(a) of the Bankruptcy Code, the license and any sale proceeds are property of the estate and subject to the administration by the Trustee and subject to the orders of this Court. The sale and/or the cancellation of any sale are likewise subject to the jurisdiction of this Court pursuant to § 363 of the United States Bankruptcy Code.

> Accordingly, it is ORDERED that all of the funds from the sale shall be turned over to the Trustee by 5:00 p.m. today by any person and/or entity who has possession and/or control, including but not limited to Michael E. Carrico, Gina M. Dougherty, Danny Bank, and Corona, Inc.

> It is further ORDERED that Michael E. Carrico, Gina M. Dougherty, Danny Bank, and Corona, Inc. shall appear before this Court on *Friday, February 2, 1996, at 1:30 p.m.,* ... to show cause why they should not be held in civil contempt pursuant to Bankruptcy Rule 9020(b) based upon the unauthorized transfer of the license and the failure to turn over the funds from the sale to the Trustee. Failure to comply with this Order may result in the incarceration of offending parties.

> It is further ORDERED that the United States Marshal is directed to serve this Order upon Michael E. Carrico, Gina M. Dougherty, Danny Bank, and Corona, Inc., with costs of service to be paid by the estate. (emphasis in the original).

The United States Marshal's services were used to serve the Second Order to ensure the parties had notice and the prompt recovery of the funds. Mr. Bank communicated with the Marshal and indicated he would meet in different places—Capital University Law School, where he is employed as an instructor, and his office. After various failed attempts, the Marshal finally was able to serve Mr. Bank at his home at 7:30 p.m. on February 1, 1996. Ms. Dougherty and Mr. Ornelas were served with much less difficulty, but the Marshal was unable to serve the Debtor. As of 5:00 p.m. on February 1, 1996, the sale proceeds were in Mr. Bank's possession, contrary to the Second Order.

At the hearing held on February 2, 1996, Mr. Bank, Ms. Dougherty, Mr. Swetnam, Mr. West, and the Trustee were present. Mr. West attempted to represent Ms. Dougherty, a licensed attorney representing the Debtor as liquor license counsel, as well as the Debtor. After the Court discerned the funds remained in Mr. Bank's trust account, the Court ordered those funds immediately turned over to the Trustee. The Court recessed so the parties, escorted by two Marshals, could go to the bank and obtain a cashier's check. When the Court reconvened, Mr. Bank presented a cashier's check to the Trustee. The Court, satisfied the funds were in the hands of the Trustee and preserved for creditors, continued the issue regarding civil contempt.

On February 27, 1996, the Court entered the Third Order that provided in pertinent part:

> Michael E. Carrico, Gina M. Dougherty, Danny W. Bank, Antonio J. Ornelas for Corona, Inc., and Patrick A.T. West shall

appear to show cause why they should not be held in civil contempt pursuant to Bankruptcy Rule 9020(b) based upon the unauthorized transfer of the license and the failure to turn over the funds from the sale to the Trustee.

\* \* \* \* \* \*

It is further ORDERED that on or before **March 15, 1996,** Michael E. Carrico, Gina M. Dougherty, Danny W. Bank, Antonio J. Ornelas, and Patrick A.T. West shall file affidavits detailing their actions related to the unauthorized transfer and the failure to turn over the funds from the sale to the Trustee. (emphasis in the original).

On March 15, 1996, Ms. Dougherty, Mr. Bank, and Mr. Ornelas filed affidavits as required by the Third Order. On March 15, 1996, Mr. West filed the Debtor's Request for Disqualification on the unsubstantiated allegation that the Trustee and the presiding judge had financial interests in the Debtor's bankruptcy estate. On March 19, 1996, Mr. West filed an Affidavit of Prejudice and a Petition for Writ of Mandamus in the United States District Court. On March 19, 1996, the Court entered an Order Denying Debtor's Request for Disqualification.

On March 20, 1996, the Court held a hearing on the Third Order where Ms. Dougherty, Mr. Bank, and Mr. West provided testimony. On March 25, 1996, the Court entered an Order Setting Hearing on Disqualification of Counsel requiring Mr. West to show cause why he should not be disqualified from representing the Debtor based upon his concurrent representation of Ms. Baum, a creditor of the estate, and his March 20, 1996, testimony that appeared to be prejudicial to his client, the Debtor. For this reason, no testimony was elicited from the Debtor, and the March 20, 1996, show cause hearing was continued.

On March 28, 1996, Mr. West filed the Debtor's Counsel's Memorandum Regarding Disqualification. In this Memorandum he claimed the Code of Professional Responsibility DR 5–105(c) permitted his multiple representation of the Debtor, Ms. Baum as mother/attorney-in-fact/creditor of the Debtor, and Ms. Dougherty as liquor license attorney for the Debtor. On April 4, 1996, the Trustee and Ms. Baum attended the hearing on the Order Setting Hearing on Disqualification of Counsel; however, Mr. West did not appear. On May 14, 1996, the Court entered an Order of Disqualification of Counsel and gave the Debtor thirty (30) days to retain alternative counsel or proceed *pro se.*[4] On July 30, 1996, a Notice of Hearing was sent that scheduled the continued show cause hearing for August 15, 1996. To date, no appearances have been made on behalf of the Debtor.

On August 12, 1996, Mr. West filed a Motion for Temporary Restraining Order ("TRO Motion") in the United States District Court. On August 14, 1996, The Honorable Susan J. Dlott, United States District Court Judge, held a hearing on the TRO Motion and Petition for Writ of Mandamus. Mr. West premised his requests for extraordinary relief on the contention that the presiding judge had a financial interest with the Trustee by setting matters for hearing where the Trustee's firm had been retained to represent the Trustee. Judge Dlott concluded Mr. West's allegations against the Trustee and the presiding judge were wholly without merit and may constitute slander and/or may be punishable by disciplinary counsel. The Petition for a Writ of Mandamus and the TRO Motion were dismissed.

On August 15, 1996, this Court conducted the continued hearing on the Third Order. The Debtor and Mr. West did not attend. On August 22, 1996, the Court entered an Order Regarding Continued Hearing on the Order to Show Cause that noted the Third Order was taken under advisement and allowed the parties thirty (30) days to file any post-hearing memoranda; however, none were filed.

---

4. After the Court disqualified Mr. West as counsel for the Debtor, he filed four subsequent pleadings that were stricken from the record. Ms. Baum filed two pleadings on behalf of the Debtor where the certificates of service were signed by Mr. West. Both pleadings were stricken from the record on the basis of the unauthorized practice of law.

■ Bankruptcy courts have inherent civil contempt powers granted in § 105(a) of the United States Bankruptcy Code that authorizes the issuance of any order, process, or judgment that is necessary or appropriate. *In re Baker,* 195 B.R. 309, 316 (Bankr.D.N.J. 1996); *In re Stutzman,* 151 B.R. 428, 431 (Bankr.N.D.Ohio 1992); *In re Maxair Aircraft Corp. of Georgia, Inc.,* 148 B.R. 353, 358 (M.D.Ga.1992). Federal Rule of Bankruptcy Procedure 9020(b) establishes the procedure to be followed. Judicial contempt powers are considered a "power of self-defense" limited to sanctioning those "who interfere with the orderly conduct of [court] business or disobey orders necessary to the conduct of that business...." *Young v. United States ex rel. Vuitton,* 481 U.S. 787, 821, 107 S.Ct. 2124, 2145, 95 L.Ed.2d 740 (1987) (Scalia, J., concurring in judgment).

■ It is a fundamental principle that attorneys must refrain from engaging in conduct prejudicial to the administration of justice. Code of Professional Responsibility DR 1–102(a)(5) (1996). "It is hornbook law that the mere fact that an order is erroneous does not mean that a party may violate it with impunity. A court's order must, in all but the most extreme cases, be obeyed, unless the party against whom the order is directed can obtain a stay." *In re Ragar,* 3 F.3d 1174, 1180 (8th Cir.1993) (where an order is based on an error of law, the remedy is an appeal rather than willful noncompliance).

■ A civil contempt finding must be based upon clear and convincing evidence that the parties violated a definite and specific court order, and that the parties had knowledge of the order requiring the parties to perform or refrain from performing particular acts. *In re Stutzman,* 151 B.R. at 430; *In re Baker,* 195 B.R. at 317; *Grace v. Center for Auto Safety,* 72 F.3d 1236, 1241 (6th Cir.1996) (*citing, N.L.R.B. v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 590 (6th Cir. 1987)); *Harrison v. Metropolitan Gov't.,* 80 F.3d 1107, 1112 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996). All that is required is a showing the parties had actual notice of the Court's order. *In re Snider Farms, Inc.,* 125 B.R. 993, 996 (Bankr.N.D.Ind.1991). The fact that an order is oral and/or is not docketed is insignificant as long as there is evidence of knowledge of the order and the contempt proceedings are civil in nature. *In re Snider Farms, Inc.,* 125 B.R. at 998; *In re Jaques,* 761 F.2d 302, 307 n. 3 (6th Cir.1985).

■ The parties have the burden of showing an inability to comply with the Court's order after taking "all **reasonable** steps within their power to comply with the court's order." (emphasis added). *Harrison,* 80 F.3d at 1112; *see also In re Affairs with a Flair,* 123 B.R. 724, 727 (E.D.Pa. 1991); *In re Stutzman,* 151 B.R. at 430–431; *Peppers v. Barry,* 873 F.2d 967, 969 (6th Cir.1989). It is not sufficient to simply claim actions constituted diligent or good faith efforts toward compliance. *In re Affairs,* 123 B.R. at 727; *Peppers,* 873 F.2d at 968–69. Subsequent to a finding of civil contempt, damages can be awarded if expenses were incurred to enforce compliance. *In re Baker,* 195 B.R. at 321; *In re Maxair,* 148 B.R. at 359.

The Court will begin by dismissing Mr. Ornelas as a subject of this civil contempt proceeding. He appears to have been an innocent bystander and had no knowledge of the actions taken by the other subjects of this Memorandum Opinion and Order.

■ The Court turns its attention to the actions of the Debtor. Upon the date of the filing of the petition, the Debtor's liquor license became property of the bankruptcy estate pursuant to § 541(a)(1) of the United States Bankruptcy Code. By operation of §§ 323(a), 363(b)(1) of the United States Bankruptcy Code, only the Trustee had the authority to sell property of the estate. Post-petition, the Debtor did not surrender the liquor license to the Trustee as required by § 521(4) of the United States Bankruptcy Code. Rather, the Debtor sold the liquor license to Corona. The Court concludes the Debtor's post-petition transfer violated clear statutory provisions that prohibited disposition of estate property by the Debtor. The Debtor's actions in this, the second bankruptcy filing, caused the Trustee and the Court to expend countless hours and considerable expense to regain control of the estate asset,

and served as the impetus for the actions of the other parties to this contempt proceeding. On this basis the Debtor is held in civil contempt. *See In re Snider Farms, Inc.,* 125 B.R. at 998–99 (CEO of debtor corporation found in civil contempt and required to compensate the estate for damages resulting from the unauthorized disposition of sale proceeds). *In re Crabtree,* 39 B.R. 702, 709–710 (Bankr.E.D.Tn.1984) (debtor found in civil contempt for failure to turn over property of the estate as required by 11 U.S.C. § 521(3)).

▆▆▆▆ Next the Court will turn its attention to Ms. Dougherty and Mr. Bank. The Court finds the Oral Ruling, First Order and Second Order specifically required the sale proceeds from the liquor license to be turned over to the Trustee and required the attendance of counsel at the scheduled hearings in the absence of the turnover. The Court finds Ms. Dougherty and Mr. Bank had actual knowledge of the Oral Ruling and the First Order based upon their possession of the unsigned, courtesy copy of the First Order at their January 31, 1996, meeting. The Court also finds Ms. Dougherty and Mr. Bank had actual knowledge of the Second Order that was personally served on them by the United States Marshal.

Mr. Bank and Ms. Dougherty must show an inability to comply with the Oral Ruling, First Order and Second Order after taking all reasonable efforts to comply. Ms. Dougherty knew of this second bankruptcy filing on January 26, 1996, when she talked with Mr. West, and on January 29, 1996, knew the Trustee was trying to sell the liquor license, when the Trustee first corresponded with her. At the January 31, 1996, meeting, Ms. Dougherty and Mr. Bank knew of the Debtor's second bankruptcy filing, the January 31, 1996, hearing, the Oral Ruling and the unsigned, courtesy copy of the First Order. The Court is especially dismayed by Ms. Dougherty's decision to transfer the funds to Mr. Bank after the Trustee's January 29, 1996, correspondence and after receipt of the unsigned, courtesy copy of the First Order. Mr. Bank's attempts to avoid service of the Second Order by the United States Marshal is at odds with the basic concept of notice to an officer of the court.

▆▆▆ Technical discrepancies, ethical obligations, lack of familiarity with the bankruptcy process, and personal residential crisis, do not amount to all reasonable efforts to turn over the estate assets to the Trustee or attend the hearing on February 1, 1996. Ms. Dougherty and Mr. Bank's attempts to void the contract and return the sale proceeds to Corona, coupled with their failure to turn over the sale proceeds until the February 2, 1996, hearing, are not indicative of officers of the court attempting to take all reasonable steps to comply with a court order. At a minimum on January 31, 1996, Ms. Dougherty and Mr. Bank should have taken no further action and sought instruction from this Court. For these reasons, the Court concludes Ms. Dougherty and Mr. Bank should be held in civil contempt.

▆▆▆ Finally, the Court turns its attention to Mr. West. The Court notes that Mr. West cannot be responsible for the actions of his client, the Debtor. As soon as Mr. West became aware of the Debtor's transfer of estate property, he notified the Trustee. It is Mr. West's actions subsequent to the January 31, 1996, hearing, however, that have made him a party to this civil contempt proceeding. Mr. West was present at the January 31, 1996, hearing when the Court issued an Oral Ruling requiring the turnover of the funds by 5:00 p.m. that day and established a hearing on civil contempt for the next day in the event of noncompliance. Mr. West was present at that hearing on January 31, 1996, when the Court directed the Trustee to prepare an order memorializing the Oral Ruling.

Armed with this knowledge, Mr. West immediately journeyed to the offices of Ms. Dougherty and Mr. Bank. His communications to them focus upon the lack of capacity of the Debtor to convey the license, rather than the Court's directive to have the proceeds turned over to the Trustee. The Court concludes the timing of Mr. West's visits and the nature of his communications to Ms. Dougherty and Mr. Bank gave them both the opportunity and impetus to attempt to reverse the transaction and transfer the funds. The Court concludes that Mr. West's actions

served to impede the efforts of the Court and Trustee to recover the funds and aided the efforts of Ms. Dougherty and Mr. Bank to transfer the funds in violation of the Court's directive. On this basis, the Court concludes Mr. West shall be held in civil contempt. *See Gemco Latinoamerica, Inc. v. Seiko Time Corporation,* 61 F.3d 94, 98 (1st Cir.1995) (court held that a nonparty, although not directly bound by the order, may be held in civil contempt if it knowingly aids or abets a party in violating the court order).

The Court concludes that the Debtor, Ms. Dougherty, Mr. Bank, and Mr. West are in civil contempt. The Debtor, Ms. Dougherty, Mr. Bank, and Mr. West shall be held jointly and severally liable for the professional fees and expenses incurred by the Trustee and the United States Marshal to recover the sale proceeds and the professional fees and expenses incurred during the course of this civil contempt proceeding, including those associated with any appeal. The Trustee and United States Marshal are given leave to file a statement of their costs within twenty days from entry of this Memorandum Opinion and Order. Upon receipt, the Court will issue separate judgment orders.

**IT IS SO ORDERED.**