**In re VILLAGE CRAFTSMAN, INC., a New Jersey corporation, Debtor.**

**Bankruptcy No. 89–08099.**

United States Bankruptcy Court, D. New Jersey.

Nov. 3, 1993.

Richard A. Murray, Newark, NJ, for PSE & G.

Joseph F. Riga, Drinker, Biddle & Reath, Princeton, NJ, for Princeton Polychrome Press.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This constitutes the court's decision on the following two motions. The first is a motion by Princeton Polychrome Press ("Polychrome Press") to hold Public Service Electric and Gas Co. ("PSE & G") in contempt of an order entered by this court on May 3, 1993 requiring that PSE & G reestablish the prepetition security deposit of Village Craftsman (the "debtor") and to pay Polychrome Press $500.00 in attorneys' fees. The second is a motion by PSE & G to vacate the May 3, 1993 order, authorize the setoff of the deposit plus interest and allow PSE & G to amend its proof of claim to reflect the setoff. This court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b), 157(a) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (K) and (O). For the reasons which follow, the first motion is granted and the second motion is denied. This shall constitute the court's findings of fact and conclusions of law.

### FINDINGS OF FACT

On approximately June 7, 1989 and July 7, 1989, the debtor provided two checks in the total amount of $12,650.00 to PSE & G as security deposits against future energy bills. On October 12, 1989, the debtor filed a voluntary petition under chapter 11 of title 11, United States Code ("Bankruptcy Code" or "Code"). The debtor listed PSE & G on its schedules as an unsecured creditor. On or about November 13, 1989 the debtor's controller, Jesse Wilcox, sent PSE & G a letter requesting that the deposit be transferred to

the debtor's debtor-in-possession account. The debtor did not receive any reply from PSE & G to that letter.

On December 5, 1989, however, PSE & G filed a proof of claim in the amount of a $13,393.14. The proof of claim failed to mention the existence of the security deposit. Additionally, the proof of claim listed a Princeton post office box address in response to the request for "[t]he post office address of the claimant and the address to which all notices to this claimant should be addressed."

On August 6, 1992, notice was served for the September 8, 1992 hearing on a disclosure statement filed by creditor Polychrome Press. At the hearing, the court ruled that the disclosure statement would be approved on the papers when Polychrome Press submitted an amended disclosure statement embodying certain changes approved at the hearing. On September 10, 1992, Polychrome Press submitted the amended disclosure statement and on September 18, 1992, the court signed an order approving such disclosure statement and setting dates for objections to the proposed plan and for a confirmation hearing.

The confirmation hearing was held on October 26, 1992, at which this court confirmed the amended plan filed by Polychrome Press (the "plan"). Pursuant to the plan, Polychrome Press's secured claim was converted to part equity and part debt, Polychrome receiving 70% of new common stock of the reorganized debtor and, thus, becoming the controlling interest in the reorganized debtor. The plan included PSE & G's entire claim in the class of unsecured creditors and obligated the debtor to pay that class 12.5 cents on the dollar over five years. At no time did PSE & G object to either the disclosure statement or the plan, although it received adequate notice of both hearings and was given ample opportunity to object.

On February 10, 1993, the debtor received a letter from PSE & G requesting that the debtor forward to PSE & G another security deposit of $11,000.00 to cover the debtor's alleged postpetition delinquent payments.[1] In response, the debtor inquired concerning the whereabouts of the prepetition security deposit. After further inquiry by the debtor and a number of evasive responses from PSE & G, PSE & G furnished the debtor with an accounting which revealed that on or about November 30, 1989, PSE & G had "applied" the debtor's security deposit and interest to its prepetition claim of $13,393.14, resulting in a balance due to PSE & G of $469.98. *See* Certification Of Jesse Wilcox In Support Of The Motion Of Village Craftsman, Inc. For An Order Finding PSE & G In Contempt Of Court Order Dated May 3, 1993 And For Other Relief, Appendix G.

PSE & G never sought relief from the automatic stay or any other form of authorization for its setoff of the debtor's security deposit against its claim. Nor did PSE & G ever notify the debtor of its intent to set off. The exact date that PSE & G set off is not clear from the record.[2] It is clear, however,

---

1. There is a dispute surrounding the debtor's alleged delinquent postpetition payments. Specifically, PSE & G asserts that the debtor did not pay its August, September, December and January bills until after the following month's bills were issued. PSE & G further maintains that the timing of these payments was not in accordance with the Tariff for Electric and Gas Service filed with the Board of Regulatory Commissioners which mandates that bills from PSE & G must be paid within 10 days. *See* Affidavit of E. Richard Meade In Support of PSE & G's Motion to Vacate the Order of May 3, 1993, to Authorize the Setoff of the Deposit Plus Interest and to Further Allow PSE & G to Amend it Proof of Claim to Reflect the Setoff. The debtor, however, claims that its failure to pay its postpetition bills promptly was a direct result of PSE & G's late delivery of the bills. The court has not been asked to resolve that dispute and does not find it necessary to do so to rule on these motions.

2. As stated, the accounting which PSE & G sent over to the debtor indicates that PSE & G set off on the security deposit on November 30, 1989. However, in the affidavit of E. Richard Meade attached to PSE & G's pending motion papers, it is asserted that at some point after November 28, 1989, when PSE & G forwarded its proof of claim to the court for filing, "it was discovered that a deposit was held on the account of the debtor in the amount of $12,650.00 ... and said deposit plus interest through the filing date in the amount of $12,923.16 was applied toward prepetition indebtedness...." *See* Affidavit of E. Richard Meade, attached to the Notice Of Motion To Set Off Prepetition Security Deposit, To Amend Proof Of Claim And To Vacate Order Of May 3, 1993 Reestablishing Security Deposit And

based on admissions of PSE & G that it set off on the debtor's security deposit postpetition and after the proof of claim was filed. Nevertheless, PSE & G failed to file an amended proof of claim reflecting the setoff and attributed such failure to a "procedural oversight." *See* Affidavit of E. Richard Meade, attached to the Notice Of Motion By PSE & G To Set Off Pre-petition Security Deposit, To Amend Proof Of Claim And To Vacate Order Of May 3, 1993 Reestablishing Security Deposit And For Payment Of Attorney's Fees, at 4.

After learning of the setoff, Polychrome Press filed a motion on April 12, 1993 on behalf of the reorganized debtor for an order pursuant to Code §§ 362(a), (c) and (h) compelling PSE & G to reestablish the security deposit. On May 3, 1993, the court entered an order granting the requested relief and further requiring PSE & G to pay Polychrome Press's attorneys' fees in the amount of $500.00 within thirty days of the date of the order.

The debtor sent notice of that motion to the address provided by PSE & G in its proof of claim as the address to which all notices to it should be sent. Moreover, prior to the hearing date on the motion to compel reestablishment of the deposit, the debtor placed numerous calls to PSE & G in an attempt to settle the matter. However, PSE & G never returned the debtor's phone calls, did not respond to the motion and did not appear at the hearing. It wasn't until approximately May 12, 1993 that PSE & G contacted the debtor and requested copies of the motion papers and the May 3, 1993 order. PSE & G contends they were not properly served with the moving papers prior to the hearing, never received the papers and thus had no notice of the hearing.

Thereafter, the debtor again made an offer to PSE & G in an attempt to settle the matter. PSE & G never responded to the offer and failed to comply with the order of May 3, 1993. On June 7, 1993, Polychrome Press filed a motion to hold PSE & G in contempt of the May 3, 1993 order and to

pay Polychrome Press an additional $500.00 in attorney's fees. PSE & G then filed a cross-motion to vacate the May 3, 1993 order, to authorize the setoff of the deposit and to allow PSE & G to amend its proof of claim to reflect the setoff.

## CONCLUSIONS OF LAW

### I.

The first issue concerns the timeliness of PSE & G's motion for reconsideration or motion to vacate the May 3, 1993 order. The Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), which incorporate certain Federal Rules of Civil Procedure ("Federal Rules"), do not specifically address motions to vacate or for reconsideration. Such motions are, however, generally considered under Federal Rule 59(e) entitled "Motion To Alter or Amend a Judgment," which is incorporated by reference in Bankruptcy Rule 9023. *In re 6 & 40 Invest. Group Inc.*, 752 F.2d 515, 515 (10th Cir.1985); *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir.1979) (citing *Sonneblick–Goldman Corp. v. Nowalk*, 420 F.2d 858 (3d Cir.1970)), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *In re Curry and Sorensen, Inc.*, 57 B.R. 824, 827 (9th Cir. BAP 1986); *In re Williams*, 124 B.R. 864, 866 (Bankr.N.D.Fla. 1991); *In re Oklahoma P.A.C. First Ltd. Partnership*, 122 B.R. 387, 393–94 (Bankr. D.Ariz.1990). Federal Rule 59 provides that "[a] motion to alter or amend the judgment shall be served not later than *10 days* after entry of the judgment." *See* FED.R.CIV.P. 59(e).

Moreover, Rule 3(h) of the Local Bankruptcy Rules for the District of New Jersey ("Local Rules") specifically addresses motions for reconsideration. Local Rule 3(h) states that "[a] motion for reconsideration shall be filed within *10 days* of the filing of the Court's order or judgment on the original motion." *See* D.N.J.BANKR.CT.R. 3(h). PSE & G's motion to vacate the May 3, 1993 order was filed on June 7, 1993, and therefore was not filed within 10 days of the entry of the

---

For Payment Of Attorney's Fees, at 3. Moreover, on June 25, 1990, PSE & G paid the debtor interest on the prepetition security deposit,

which suggests that PSE & G might not have set off on the security deposit until at least that date.

order. Accordingly, PSE & G's motion to vacate the May 3, 1993 order is denied as untimely under Federal Rule 59(e) and Local Rule 3(h). However, the court will nevertheless address the merits of PSE & G's arguments to the extent that it is necessary to do so to rule on Polychrome Press's motion.

## II.

■ The second issue is whether the debtor properly served PSE & G with its motion to compel reestablishment of the security deposit. Bankruptcy Rule 9014 provides that a "motion shall be served in the manner provided for service of a summons and complaint by Rule 7004." *See* FED.R.BANKR.P. 9014. Bankruptcy Rule 7004(b)(3) provides that service upon a domestic corporation is deemed proper "by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process...." *See* FED.R.BANKR.P. 7004(b)(3).

PSE & G asserts that it was not properly served because the debtor's motion papers were mailed to a post office box address in Princeton (the "Princeton address") and not mailed to an officer or agent of PSE & G pursuant to Bankruptcy Rule 7004(b)(3). Moreover, counsel for PSE & G further contends that "it is generally known among bankruptcy attorneys in the State of New Jersey that [their] office represents Public Service and will accept service on its behalf...." *See* Affidavit of Suzanne M. Klar In Support Of Motion By PSE & G To Set Off Prepetition Security Deposit, To Amend Proof Of Claim And To Vacate Order Of May 3, 1993 Reestablishing Security Deposit And For Payment Of Attorney's Fees.

PSE & G fails to recognize, however, that the debtor's motion papers were sent to the Princeton address because that was the address which PSE & G designated on its proof of claim as *"the address to which all notices to this claimant should be addressed."* By voluntarily designating this address to be the one to which all notices are sent, PSE & G has held this address out to be the proper address for service under Bankruptcy Rule 7004(b)(3). In addition, Bankruptcy Rule

2002(g), which provides service requirements for the types of applications specified under Bankruptcy Rule 2002, supports this finding. Specifically, Bankruptcy Rule 2002(g) provides:

> All notices required to be mailed under this rule to a creditor ..., shall be addressed as such entity or an authorized agent may direct in a filed request; otherwise, to the address shown in the list of creditors or the schedule whichever is filed later. *If a different address is stated in a proof of claim duly filed, that address shall be used unless a notice of no dividend has been given.*

*See* FED.R.BANKR.P. 2002(g). PSE & G cannot submit an address to the court as that to which all notices should be sent and then argue that it was not properly served when notices are sent to that address.

■ PSE & G's argument that the debtor's service was improper because it was sent to a different address than that which is allegedly generally known in the New Jersey bankruptcy community is also without merit. If PSE & G wanted a different address used for service, it should have designated such address on its proof of claim. For these reasons, the court holds that PSE & G was properly served with the motion to compel reestablishment of the security deposit.

## III.

■ The next issue is the validity of PSE & G's postpetition application of the debtor's prepetition security deposit to prepetition utility bills. PSE & G maintains that its application of the debtor's prepetition security deposit to prepetition utility bills was a recoupment, not a setoff, and therefore not subject to the automatic stay.

■ The right of setoff is expressly recognized under Code section 553(a) which provides:

> *Except as otherwise provided in this section and in sections 362 and 363 of this title,* this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor

against the debtor that arose before the commencement of the case. . . .

11 U.S.C. § 553(a) (emphasis added). Thus, the exercise of the right of setoff under Code section 553(a) is subject to the automatic stay of Code section 362. *In re Patterson,* 967 F.2d 505, 509 (11th Cir.1992); *Cain v. Mappa (In re Pineview Care Center, Inc.),* 142 B.R. 677, 683 (Bankr.D.N.J.1992), *aff'd,* 152 B.R. 703 (D.N.J.1993). Code section 362(a)(7) renders the automatic stay applicable to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). A creditor therefore cannot unilaterally setoff postpetition against a prepetition claim of a debtor without first obtaining court approval in the form of relief from the automatic stay. *United States on behalf of I.R.S. v. Norton,* 717 F.2d 767, 773 (3d Cir.1983); *In re Art Metal U.S.A. Inc.,* 109 B.R. 74, 83 (Bankr.D.N.J.1989).

Conversely, the doctrine of recoupment is not expressly addressed in the Bankruptcy Code. The doctrine of recoupment is based upon the premise that "where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation. . . ." *Lee v. Schweiker,* 739 F.2d 870, 875 (3d Cir.1984). Recoupment is an exception to the general rule that debts which arise prepetition may not be satisfied postpetition without obtaining relief from the automatic stay. *In re University Medical Center,* 973 F.2d 1065, 1080 (3d Cir. 1992); *Newbery Electric, Inc. v. MCI Constructors, Inc. (In re Newbery Corp.),* 145 B.R. 998, 1001 (9th Cir. BAP 1992). Therefore, to determine if PSE & G violated the automatic stay, the court must determine whether the postpetition application of a prepetition utility deposit to prepetition utility bills is a setoff or a recoupment.

Recoupment and setoff rights are determined by nonbankruptcy law, which ordinarily is state law. *See United States on behalf of I.R.S. v. Norton,* 717 F.2d at 771–772; *In re McLean Industries, Inc.* 90 B.R. 614 (Bankr.S.D.N.Y.1988); *Elsinore Shore Associates v. First Fidelity Bank (In re Elsinore Shore Associates),* 67 B.R. 926, 942 (Bankr.D.N.J.1986). However, the doctrine of recoupment is to be narrowly construed in bankruptcy because it is a nonstatutory, equitable exception to the automatic stay. *In re University Medical Center,* 973 F.2d at 1081.

New Jersey law defines recoupment as follows:

> New Jersey law similarly defines recoupment as 'the reduction of an offsetting claim arising out of exactly the same transaction . . .'
>
> \*     \*     \*     \*     \*     \*
>
> Recoupment is distinguishable from setoff in that the latter involves an affirmative recovery on a claim that may be independent of the transaction upon which the plaintiff's claim is based. While recoupment may be used only to reduce or extinguish the plaintiff's recovery, setoff may be awarded for any amount to which the defendant is entitled.

*Beneficial Finance Co. v. Swaggerty,* 86 N.J. 602, 609, 432 A.2d 512, 516 (1981) (citations omitted).

Applying that definition to these facts, it is apparent that the right which PSE & G had in the debtor's security deposit is in the nature of setoff rather than recoupment. If a deposit is less than a debt, the utility has the right to recover the difference from the customer. The utility may also require that the deposit be restored to its original amount. N.J.A.C. 14:3–7.3. Conversely, if the account is closed or the customer's credit becomes such that a deposit is no longer necessary, the customer is entitled to the return of the amount by which the deposit exceeds any unpaid bill. N.J.A.C. 14:3–6.3. Since both parties can recover any amount by which its claim exceeds the other's claim, PSE & G's rights in the security deposit are in the nature of setoff. Moreover, the posting of a security deposit and the incurring of a subsequent debt for utility services do not arise from "exactly the same transaction" within the meaning of New Jersey law. *Beneficial Finance Co. v. Swaggerty, supra.* They certainly arise from related transac-

tions in the same relationship, but they do not arise from exactly the same transaction.

There is a divergence of authority in other jurisdictions on the issue of whether application in bankruptcy of a utility deposit is in the nature of setoff or recoupment. For cases holding that such application is in the nature of setoff, *see Houdashell v. Missouri Public Service Co. (In re Houdashell)*, 7 B.R. 901 (Bankr.W.D.Mo.1981); *In re Cole*, 104 B.R. 736 (Bankr.D.Md.1989). In addition, for cases holding that rights in security deposits other than utility deposits are in the nature of setoff, *see e.g. In re Northeastern International Airways, Inc.*, 99 B.R. 487 (Bankr.S.D.Fla.1989) (airport user fees); *In re Aspen Data Graphics, Inc.*, 109 B.R. 677 (Bankr.E.D.Pa.1990) (rent); *In re Scionti*, 40 B.R. 947 (Bankr.D.Mass.1984) (rent); *In re Lackow Bros., Inc.*, 22 B.R. 1022 (Bankr. S.D.Fla.1982) (rent). *See also* 4 Collier on Bankruptcy, ¶ 553.04 at 553–23 (15th ed. 1989). For cases holding that rights in a utility deposit are in the nature of recoupment, *see Brooks Shoe Manufacturing Co., Inc. v. United Tel. Co.*, 39 B.R. 980 (E.D.Pa. 1984); *In re Public Service Co. of New Hampshire*, 107 B.R. 441 (Bankr.D.N.H. 1989); *Blasbolg v. Narrogansett Electric Co. (In re Miner Industries, Inc.)*, 119 B.R. 6 (Bankr.D.R.I.1990); *In re Norsal Industries, Inc.*, 147 B.R. 85 (Bankr.E.D.N.Y.1992).

■ The cases holding that rights in a utility deposit are in the nature of recoupment are not persuasive here for two primary reasons. First, as previously noted, such rights are determined by state law, and none of those cases analyze New Jersey law as set forth in *Beneficial Finance Co. v. Swaggerty, supra.* Second, such cases fail to discuss the fact that a security deposit which was posted prepetition by a debtor and which had not been applied to the debt when the petition was filed is cash collateral as defined by Code section 363(a). As such, a debtor in possession can use such deposit for other purposes under Code sections 363(c)(2) and 1107(a) by providing adequate protection for such deposit under Code sections 363(e) and 361. A debtor in possession can compel turnover of such deposit under Code section 542(a). The view that postpetition applica-

tion of a security deposit is recoupment rather than setoff undermines the purposes of Code sections 363(a) and (c).

■ PSE & G argues that the necessity to seek relief from the automatic stay to exercise the right of setoff as to a utility deposit imposes a heavy burden on utilities and the bankruptcy courts. The court has considered that argument carefully, and shares PSE & G's concerns about such burdens. However, a creditor can often obtain relief from the automatic stay without applying for it, by waiting for one of the circumstances in Code section 362(c) to take effect. That should suffice in most chapter 7 cases, in which the trustee will rarely have occasion to apply for use of a security deposit. To the extent that utilities must seek relief from the automatic stay under Code section 362(d) in cases under other chapters, considerations of inconvenience simply do not override the need to uphold court protection of all cash collateral to further the rehabilitative purposes of such other chapters.

For all of the foregoing reasons, the court holds that the rights of a creditor in a security deposit in New Jersey are in the nature of setoff rather than recoupment, and any postpetition exercise of such rights is subject to the automatic stay of Code section 362(a). It follows that PSE & G's exercise of such rights in this case without obtaining authorization from the court violated Code section 362(a), and is therefore void. *Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir.1991); *In re Ward*, 837 F.2d 124, 126 (3d Cir.1988); *Michaels v. National Bank of Sussex County (In re E–Tron Corp.)*, 141 B.R. 49, 55 (Bankr.D.N.J. 1992).

■ The court declines to grant retroactive approval of such setoff. The court has discretion to deny exercise of a right of setoff. It is appropriate to deny such exercise where a creditor has engaged in improper conduct such as, for example, conversion of the debtor's property. *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir.1990); *In re Windsor Communications Group, Inc.*, 79 B.R. 210, 216 (E.D.Pa.1987). In this case, PSE & G has

acted improperly by setting off without obtaining relief from the automatic stay; failing to inform the debtor of the setoff; failing to amend its proof of claim to reflect the reduction which would have resulted from the setoff; failing to respond in a timely manner to Polychrome Press' motion to compel reestablishment of the security deposit; and failing to comply with the order to reestablish the deposit and pay attorneys fees. Moreover, PSE & G's proof of claim was filed as unsecured, and PSE & G did not object to confirmation of the plan which treats its claim as unsecured. Under these circumstances, the court concludes that PSE & G has lost its right of setoff.[3] PSE & G's entire prepetition claim of $13,393.14 will be treated as unsecured in accordance with the terms of the plan. PSE & G was given adequate notice of the confirmation hearing and failed to object. PSE & G is therefore is bound by the terms of the confirmed plan. *See* 11 U.S.C. § 1141(a).

## IV.

Finally, the court will consider whether PSE & G's actions are sufficient to hold it in contempt of the May 3, 1993 order.[4] It has been held that "for a party to be held in civil contempt, a court must find that the party violated a specific and definite court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conduct." *In re Stephen W. Grosse, P.C.,* 84 B.R. 377, 383 (Bankr.E.D.Pa. 1988), *aff'd, In re Grosse,* 96 B.R. 29 (E.D.Pa. 1989), *aff'd, Dubin v. Jakowbowski,* 879 F.2d 856 (3d Cir.1989). *See also United States v. Christie Industries, Inc.,* 465 F.2d 1002, 1006 (3d Cir.1972); *In re Rubin,* 378 F.2d 104, 108

(3d Cir.1967). The notice must give "fair warning that certain acts are forbidden [or required]; [and] any ambiguity in the law should be resolved in favor of the party charged with contempt." *United States on behalf of I.R.S. v. Norton,* 717 F.2d at 774; *Christie,* 465 F.2d at 1006.

A civil contempt remedy serves two purposes. Primarily, it has a remedial purpose to coerce a recalcitrant party to comply with a court order. *Taberer v. Armstrong World Industries, Inc.,* 954 F.2d 888, 896 (3d Cir.1992); *In re Grand Jury Proceedings Harrisburg Grand Jury 79–1,* 658 F.2d 211, 217 (3d Cir.1981). It also has a compensatory purpose to reimburse the injured party for losses and expenses sustained due to noncompliance with the order. *McDonald's Corp. v. Victory Investments,* 727 F.2d 82, 87 (3d Cir.1984); *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1344 (3d Cir. 1976); *In re Voight,* 24 B.R. 983, 988 (Bankr. N.D.Tex.1982). Accordingly, "there can be little doubt 'that in a civil contempt action occasioned by willful disobedience of a court order an award of attorney's fees may be authorized.'" *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Ass'n,* 660 F.2d 76, 84 (3d Cir.1981).

Although PSE & G claims that it did not have notice of the motion which gave rise to the May 3rd order, PSE & G admits that on May 12, 1993, it received a copy of the order. Although PSE & G therefore knew that it had to comply with the May 3rd order within 30 days, it chose not to do so. Moreover, PSE & G sought no relief from the order until Polychrome Press moved to hold it in

---

**3.** In its papers, PSE & G primarily relies on *In re De Laurentiis Entertainment Group Inc.,* where the court allowed a creditor exercise its right to setoff after the confirmation of the debtor's plan. *In re De Laurentiis Entertainment Group Inc.,* 963 F.2d 1269, 1276 (9th Cir.1992), *cert. denied, Carolco Television, Inc. v. National Broadcasting Co.,* —— U.S. ——, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992). That case, however, is distinguishable from this one because the creditor in *De Laurentiis* had followed the proper procedures in attempting to exercise its right to setoff, ie., the creditor filed a proof of claim asserting its right to setoff, filed a motion for relief from the automatic stay seeking the court's permission to exer-

cise its right to setoff and "pursued its claim diligently before the bankruptcy court at all times." *Id.* at 1271.

**4.** PSE & G's actions were sufficiently improper that the imposition of punitive damages pursuant to section 362(h) might have been appropriate in this case if the debtor had made a timely request for such damages. *See In re Atlantic Business and Community Corp.,* 901 F.2d 325, 329 (3d Cir.1990); *In re University Medical Center,* 973 F.2d 1065, 1087 (3d Cir.1992); *In re Adams,* 106 B.R. 811, 831 (Bankr.D.N.J.1989); *In re Dutton,* 15 B.R. 318, 322 (Bankr.D.N.J.1981).

contempt. The court holds that PSE & G is in civil contempt of the May 3rd order, and that its willful noncompliance with the order warrants the imposition of sanctions.

For the foregoing reasons the court reiterates that PSE & G shall reestablish the debtor's security deposit in the amount of $13,393.14 and pay Polychrome Press's attorneys' fees in the amount of $500.00 in accordance with the May 3, 1993 order. The court further concludes that PSE & G is bound by the terms of the confirmed plan and its prepetition claim will be treated as an unsecured claim under the plan. The court further orders that PSE & G shall pay an additional $500.00 for attorneys' fees incurred by Polychrome Press in compelling compliance with the May 3rd order.

Polychrome Press shall submit an order within five days under Local Rule 4(d).