**In re Alan BAKER, Debtor.**

**Bankruptcy No. 91–34408.**

United States Bankruptcy Court,
D. New Jersey.

May 6, 1996.

312

Robert F. Varady, LaCorte, Bundy & Varady, Elizabeth, New Jersey, for J. Patrick Growney.

Larry Lesnick, Ravin, Greenberg & Marks, P.A., Roseland, New Jersey, for Chapter 11 Trustee Charles Forman.

Lee D. Gottesman, Law Offices of Lee D. Gottesman, Toms River, New Jersey, for Vincent Layton.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's opinion on a motion by Charles Forman, the trustee for the estate of Alan Baker Sr., to hold Vincent Layton (hereinafter "Layton") in contempt. The grounds for the trustee's motion are alleged violations by Layton of an order entered on January 3, 1996 regarding the sale of assets to a third party who outbid Layton for those assets. This court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The court's findings of fact and conclusions of law are as follows.

### FINDINGS OF FACT

The following facts are undisputed. On November 6, 1995, the trustee filed a motion for the sale of both the debtor's real property located at 1022 Lacey Road in Forked River, New Jersey and the operating assets of Southern New Jersey Funeral Services, Inc. (hereinafter "Southern") to J. Patrick Growney (hereinafter "Growney").[1] The notice of motion and the notice under Fed.R.Bankr.P. 2002(a) indicated that the real property and all physical assets, goodwill, trade names, licenses and contract rights of Southern were to be included in the sale. Layton, the operator of the funeral home, objected to the sale and made a competing bid.

On December 4, 1995, the court conducted a hearing regarding the sale. Layton appeared at the hearing to bid against Growney for the acquisition of the property. Before the court conducted competitive bidding, however, the parties agreed that the sale would not include the trade name, "Layton's Home for Funerals." After Growney submitted the highest and final bid of $600,000.00 for the real property and $120,000.00 for the personal property, the court inquired as to the items of personal property included in the sale. The trustee's counsel stated that he believed the personal property included

---

1. Although Southern did not file a bankruptcy petition, the debtor holds title to all of its capital stock. Layton, who operated Southern, contends in a separate adversary proceeding that he is the equitable owner of 50% of Southern's stock. The parties consented to the sale of Southern's assets in the bankruptcy court by the trustee in this case, with any interests of Layton therein to attach to the proceeds of sale.

all items listed on an inventory sheet which was prepared in April or May of 1995. At that point, Layton's counsel interjected and argued that certain items listed on the sheet were not owned by Southern. Layton's counsel stated that he did not know the precise items that were not owned by Southern and that he would submit a list of those items.

Before ruling on the sale, the court directed the parties to discuss and decide which assets were to be included in the sale. After the parties had conferred, they advised the court that no one had a copy of the inventory sheet. Nonetheless, the trustee's counsel stated that Layton had provided Growney with a list of items that Layton would claim as his personal property. These items included a globe, a deacon bench, six chairs in a business office, a file cabinet, all art work contained in wooden frames, and all motor vehicles. Layton also asserted that certain additional "knickknacks" were also to be excluded. Layton's counsel represented that:

> [i]n terms of the significant assets, rugs, embalming tables, things of that nature, there is no dispute about the fact that [these] items belong as corporate assets. The list which has been given to [Growney] and to [the trustee] is basically all inclusive, but for certain knickknack items. Again, we are not talking about major items. . . . To indicate that there is any attempt to say, well, there are significant other assets, that is just not right.

Record at 51 (Dec. 4, 1995). The court then inquired whether inventory, such as caskets, and supplies were included. Both the trustee and Growney indicated that inventory and supplies were included, however, they noted that caskets are usually held on consignment. *Id.* at 65.

Based on the apparent agreement between the parties and after considering all objections, the court overruled the objections and authorized the sale to Growney. The court then directed counsel for the trustee to submit an order within five days.

Immediately following the hearing, the trustee's counsel faxed a copy of the inventory sheet to Layton's counsel and requested any comments before December 8, 1995. The trustee's counsel again contacted Layton's counsel on December 7, 1995, and indicated that he would be submitting the proposed order the following day with or without Layton's comments regarding the inventory sheet. Layton's counsel did not respond to the trustee's requests. As a result, the order was submitted to the court by the trustee on or about December 8, 1995.

Growney objected in a timely manner to the proposed order, requesting that an additional provision be included. Based on that objection, the court instructed the trustee to submit a revised order accommodating Growney's objections. The trustee transmitted the revised order to the court and to Layton's counsel on December 20, 1995.

The proposed order submitted on December 20, 1995 noted that the date for consummating the sale was set for January 16, 1996. It also stated that the sale consisted of the real property at 1022 Lacey Road and the physical assets, good will, trade names, licenses and contract rights of Southern. In addition, the proposed order included items set forth in detail on an exhibit, as well as Southern's current business phone number(s), pre-need files, funeral records, licenses and contract rights. The annexed exhibit was the identical inventory sheet that the trustee's counsel forwarded to Layton's counsel on December 4, 1995.

On December 15, 1995, Layton filed an objection to the form of order submitted by the trustee on December 8, 1995.[2] He filed the objection before the court entered the order approving the sale and before the trustee submitted the proposed December 20, 1995, order. Layton's objection was based on several grounds. Initially, he argued that the trustee submitted the order to the court without affording him a chance to review the items included in the inventory sheet to determine which assets did not belong to Southern. Layton's objection did not

---

**2.** It should be noted that Layton never objected to the proposed form of order submitted by the trustee on December 20, 1995. Layton's counsel argues that he did not object to the form of order because he was on vacation and did not return until January 3, 1996.

specify, however, the precise items he claims did not belong to Southern.

Layton also objected to the provisions in the proposed order authorizing the sale of Southern's phone number, pre-need files and funeral records because he alleged that they were not assets of Southern. Layton argued that the subject phone number was not an asset of Southern because the phone company billed all charges directly to himself and Layton's Home for Funerals. As to the pre-need files, Layton claimed that they consist of previously arranged funeral services that Layton's Home for Funerals has not provided and are owned by clients who have contracted with the funeral home.[3]

On January 3, 1996, notwithstanding Layton's objection of December 15, 1995, the court entered the trustee's proposed form of order submitted on December 20, 1995 (hereinafter "the January 3, 1996 Order" or "the Order"). The court did not consider Layton's objection, despite its timeliness, due to a clerical error.[4]

On or about January 16, 1996, Layton filed a motion for reconsideration of the January 3, 1996 Order. Layton incorporated his objections of December 15, 1995, and argued that they were timely filed and that the court's failure to schedule a hearing or conference to address the objections was unfair and prejudicial because assets belonging to Layton were being included in the sale over his objection.

In the trustee's response to Layton's motion, he argued that Layton's objections to the proposed December 8, 1995, order were untimely. Moreover, the trustee alleged that Layton was also precluded from challenging the order because he never objected to the revised order submitted on December 20, 1995. Alternatively, the trustee argued that if the court considered Layton's objections, it must find that they are without merit because Layton had enough time to comment on the items incorporated in the order.[5]

On January 22, 1996, the court conducted a hearing on the motion for reconsideration. After considering all the objections raised by Layton, the court denied his motion. The court ruled that the telephone number and pre-need files were assets of Southern which must be included in the sale. In addition, the court held that Layton's objection with respect to the items of physical inventory was without merit because he failed to submit any competent evidence as to any claim that the property belonged to him. The court entered an order denying Layton's motion on January 26, 1996. That order also entitled Growney, or his designated agents, to inspect the funeral home before the closing.

Shortly thereafter, the trustee filed the within motion requesting an order holding Layton in contempt of court and requiring Layton to supply an accounting. The basis for the trustee's motion was that Layton had knowingly violated the January 3, 1996 Or-

---

**3.** Layton also asserted several other objections. He argued that the order must include a provision that the trade name "Layton's Home for Funerals" is not an asset of Southern. The objection was without merit because the parties had already stipulated on the record on December 4, 1995, that the trade name was not an asset of Southern.

Layton also argued that the court order may violate New Jersey law if the court authorized the sale because the proposed order contemplates the sale of substantially all of the assets of Southern, a non-debtor entity. Layton contended that, under New Jersey law, such a sale must be on notice to all creditors of Southern. The trustee argued that Layton waived this objection because he failed to raise it at the December 4, 1995, hearing. Thereafter, Layton's counsel withdrew this portion of the objection at the hearing on January 22, 1996.

**4.** The failure by the court to consider the objection was later rectified by hearing Layton's motion for reconsideration.

**5.** Growney's counsel also filed an objection to Layton's motion for reconsideration. Growney argued that Layton's request was in reality a motion for injunctive relief and that he has failed to demonstrate that he would suffer irreparable injury if the sale were to go forward or that he would have a reasonable probability of success on the merits. Moreover, Growney argued that the motion should also be denied because it fails to assert any mistake, inadvertence or excusable neglect or that there is newly discovered evidence which would alter the court's order. Growney asserted that there were thorough discussions between all the parties and the court with respect to the assets that would be specifically excluded from the sale at the hearing on December 4, 1995.

der. The trustee claims Growney conducted an inspection of Southern's premises on January 29, 1996, which revealed that many physical assets and all the records and pre-need files were missing. Moreover, the trustee alleges that Layton had ordered the local phone company to forward all phone calls to a new number for Layton's Home for Funerals that had been reopened at a new location. As a result, the trustee asserts that the closing which was rescheduled for February 1, 1996, would not proceed as planned.

In Layton's response to the trustee's motion, he claims that he did not interfere or violate the court's Order. Layton claims that he was "torn" between his obligation to comply with the January 3, 1996 Order and his obligation to comply with state statutes and regulations governing funeral home advertising and pre-need files. Cert. of Vincent Layton in Oppos. to Motion to Hold Him in Contempt. at 2. With respect to the phone number, Layton claims that when he learned he could not use it, he contacted the phone company on or about January 25, 1996, and was informed that the phone company owned the phone number and that it would hold Layton personally responsible for all advertising charges, despite the January 3, 1996 Order. In addition, Layton contends that he had all calls to the business number forwarded to a new number he had established for Layton's Home for Funerals because New Jersey regulations forbid him from advertising the old phone number.

As to the pre-need files, Layton argues that the portion of the January 3, 1996 Order directing the transfer of the files conflicts with New Jersey statutes. He alleges that, under New Jersey law, he is responsible for notifying clients that the ownership of the funeral home has passed and to return the client files directly to them. In addition, Layton asserts that the State Association of Funeral Directors directed him to maintain the pre-need files at the new location for Layton's Home for Funerals until otherwise instructed by the policy holders. As a result, Layton states that he chose to keep the pre-need files and notify the policy holders of the transfer.

The missing assets and records from the premises were the final issues addressed by Layton. In his certification, Layton examines each asset that the trustee reported missing and asserts that they represent items that were either on consignment, his personal property, property of his brother, or de minimis. For some items, Layton claims that he simply could not account for them or that the funeral home consumed them in the ordinary course of business. With respect to the missing files, Layton alleges that the records were missing because they were partially destroyed in a flood that occurred in his basement between November 11 through 14, 1995.

On January 31, 1996, the court conducted the initial hearing on the trustee's motion. During the course of the hearing, the court determined that Layton was required to comply with the January 3, 1996 Order despite the alleged conflict with New Jersey law. The court also found that Layton had not complied with the provisions of the January 3, 1996 Order regarding the phone number, the pre-need files and the business files. As a result, the court entered an Order directing Layton to immediately return all pre-need files and all other existing business files relating to the operation of Layton's Home for Funerals. In addition, the court ordered Layton to produce a copy of all letters sent to pre-need policy holders and to execute letters to the phone company directing it to route all phone calls to a phone number chosen by Growney.

The final issue addressed by the court was the missing items of inventory. The court authorized the parties to close on the sale subject to maintaining $20,000 in an escrow account pending the valuation of the missing inventory items. The court then adjourned the motion and rescheduled the hearing for February 26, 1996, to decide whether Layton should be held in contempt.

The court entered an order on February 1, 1996, incorporating its rulings of the previous day. Layton complied with all the terms of the February 1, 1996 order. Later, on or about February 6, 1996, the closing occurred. Growney paid the trustee $600,000 for the real estate, but reserved $20,000 out of the

$120,000 purchase price for the personal property. Growney's attorney is holding the $20,000 in an escrow account subject to a third party providing an appraisal of the items missing at the time of the closing.

At the hearing conducted on February 26, 1996, the court reserved decision with respect to whether it should hold Layton in contempt. Thus, the issue before this court is whether Layton violated the court's January 3, 1996 Order and, if so, whether the violation was contemptuous. The trustee argues that the court should hold Layton in contempt because he was aware of the contents of the January 3, 1996 Order and that he willfully acted in contravention of the Order. The trustee maintains that Layton had ample opportunity in which to object to the Order but failed to do so. As a result, the trustee is seeking compensation for all losses resulting from Layton's allegedly contemptuous behavior, including the reduction in purchase price that the trustee must grant Growney for the value of the missing items, the attorney's fees and the expenses incurred by the estate to bring this motion. The trustee contends that the value of the missing personal property is considerably more than $20,000 based upon an independent valuation of the items.

On the other hand, Layton argues that the trustee cannot prove by clear and convincing evidence that he should be held in contempt. Layton claims that he did not violate the January 3, 1996 Order because a genuine dispute existed between him and the trustee about which items the Order included in the sale. Layton also asserts that he did not violate the Order's provisions regarding the telephone number and the pre-need files because he acted before the court resolved these issues at the hearing on the motion for reconsideration. Moreover, Layton claims that his actions with respect to the pre-need files and the telephone number complied with New Jersey state regulations governing funeral homes. Finally, Layton contends that the language of the January 3, 1996 Order is unclear and ambiguous because it does not specify what is required nor does it provide a time frame for any actions he must perform. He alleges that he believed that he had until the date of the closing to return all missing items.

## CONCLUSIONS OF LAW

### I. Authority of the Bankruptcy Court to Sanction for Contempt

 Section 105 of title 11, United States Code (hereinafter "Bankruptcy Code" or "Code") grants the bankruptcy court power to take any action or make "any determination necessary or appropriate to enforce or implement court orders or rules...." 11 U.S.C. § 105(a). The bankruptcy court has the power to sanction parties for contempt. *See In re Stephen W. Grosse*, 84 B.R. 377 (Bankr.E.D.Pa.1988), *aff'd*, 96 B.R. 29, 32 (E.D.Pa.1989), *aff'd sub nom.*, *Dubin v. Jakobowski*, 879 F.2d 856 (3d Cir.1989), *cert. denied sub nom. Jakobowski v. Dubin*, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989); *In re Edgehill Nursing Home, Inc.*, 68 B.R. 413, 415 (Bankr.E.D.Pa.1986). The procedure for an adjudication of contempt by the bankruptcy court is set forth in Fed. R.Bankr.P. 9020. Subsection (b) of that rule provides that a bankruptcy judge may hold a party in contempt after a hearing on written notice. *Id.* The notice must state the facts constituting the contemptuous behavior and describe the contempt as either criminal or civil. *Id.* Thus, once the complainant has met the requirements pursuant to Rule 9020(b), a bankruptcy court has the power to enter a contempt order. *In re North Jersey Trading Corp.*, 177 B.R. 814, 817 (Bankr. D.N.J.1995), *aff'd*, No. 95–2876 (D.N.J. Oct. 2, 1995), *appeal denied*, 66 F.3d 312 (3d Cir.1995) (citing *In re Ragar*, 3 F.3d 1174 (8th Cir.1993); *In re Skinner*, 917 F.2d 444, 447 (10th Cir.1990)).

### II. Requirements of Fed.R.Bank.P. 9020(b)

#### A) Civil v. Criminal Contempt

 The first requirement under Fed. R.Bankr.P. 9020(b) that will be addressed is whether the contempt at issue is civil or criminal. Contempt may be either civil or criminal, depending on the "character and purpose" of the sanction at issue. *International Union, United Mine Workers of*

*America v. Bagwell,* —— U.S. ——, ——, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994). A contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant." *Id.* (quoting *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)). Thus, a civil contempt remedy serves both a remedial and compensatory purpose. The remedial purpose coerces a recalcitrant party to follow the court order. *Taberer v. Armstrong World Indus., Inc.,* 954 F.2d 888, 896 (3d Cir.1992); *In re Grand Jury Proceedings Harrisburg Grand Jury 79–1,* 658 F.2d 211, 217 (3d Cir.1981). The compensatory purpose reimburses the injured party for the expenses and losses resulting from noncompliance with the court's order. *McDonald's Corp. v. Victory Investments,* 727 F.2d 82, 87 (3d Cir. 1984); *Latrobe Steel Co. v. United Steelworkers of America, AFL–CIO,* 545 F.2d 1336, 1344 (3d Cir.1976). In contrast, the purpose of criminal contempt is punitive and to vindicate the authority of the court by punishing past acts. *Roe v. Operation Rescue,* 919 F.2d 857, 868 (3d Cir.1990) (citations omitted).

█ The stated purpose of the contempt sanction alone, however, is not determinative for establishing whether it is civil or criminal. The court must also examine the character of the sanction. In *Bagwell,* the Supreme Court held that a contempt fine is civil if it either "coerce[s] the defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses sustained." *Id.,* —— U.S. at ——, 114 S.Ct. at 2558 (quoting *United States v. United Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947)). "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Id.* (citation omitted). Thus, if the alleged contemnor is subject to a fine without an opportunity to avoid or reduce the fine, the contempt is criminal.

█ In the present case, the trustee's motion is for civil contempt. The trustee is seeking to require Layton to compensate the estate for all the losses and expenses sustained because of his violations of the January 3, 1996 Order. Moreover, Layton could have purged his contemptuous conduct by returning the missing items and compensating the estate for any losses. Thus, the "character and purpose" of the sanctions sought are civil.

**B) Procedural Requirement**

█ The second requirement under Rule 9020(b) is procedural. It mandates that the court must provide the alleged contemnor a hearing on notice. In this case, the trustee filed a written motion requesting that an order be entered holding Layton in contempt. The trustee alleged that Layton violated the January 3, 1996 Order because he had interfered with the transfer of the phone number, and that pre-need files, business records and items of inventory were missing. The claims made by the trustee provided Layton with proper notice of the essential facts constituting his alleged contempt. Moreover, the court conducted two separate hearings on January 31, 1996, and February 26, 1996, to decide if Layton's actions resulted in contempt. Accordingly, the trustee has met the notice and hearing requirement. *See Bagwell,* —— U.S. at ——, 114 S.Ct. at 2559 (concluding that fewer procedural protections for civil contempt sanctions are required because they are viewed as nonpunitive and avoidable). Thus, both requirements of Fed.R.Bankr.P. 9020(b) have been met.

**III. Standards for Civil Contempt**

█ The next issue that must be addressed is whether the trustee has met the standards for civil contempt. A plaintiff must prove the following three elements by clear and convincing evidence to establish civil contempt: "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *Roe, et al. v. Operation Rescue,* 54 F.3d 133, 137 (3d Cir.1995) (quotation omitted). The Third Circuit has noted that "where there is ground to doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt." *Quinter v. Volkswagen of America,* 676 F.2d 969, 974 (3d Cir.1982) (quoting *Fox v. Capital Co.,* 96

F.2d 684, 686 (3d Cir.1938)). The court will consider the heavy burden that the trustee must overcome in analyzing each element of civil contempt.

### A) Valid Court Order

■ The first requirement that a plaintiff must meet to establish civil contempt is the existence of a valid order. A valid order exists if its terms are "specific and definite." *In re Village Craftsman, Inc.*, 160 B.R. 740 (Bankr.D.N.J.1993) (citing *Grosse, P.C.*, 84 B.R. at 383). *See also United States v. Christie Indus., Inc.*, 465 F.2d 1002, 1006 (3d Cir.1972) ("person will not be held in contempt of an order unless the order has given him fair warning that his acts were forbidden."); *In re Rubin*, 378 F.2d 104, 108 (3d Cir.1967) (holding that order said to be violated must be specific and definite.).

■ In this case, the January 3, 1996 Order provides that:

[t]he assets of [Southern] to be included in the sale thereof to Growney shall consist of those inventory items set forth in detail on attached Exhibit 'A,' as well as inventory items in the embalming room of the funeral home operated by the corporation as required by N.J.S.A. 45:7–38 and N.J.A.C. 13:36–5.6, and all stretchers, embalming tables and embalming machines therein; the Corporation's current *business phone number(s), all pre-need files and past funeral files* thereof, and all licenses and contract rights belonging thereto, but shall specifically exclude all motor vehicles of any kind owned by the Corporation.

(emphasis supplied). The exhibit referred to within the Order lists approximately 388 items of inventory.

Layton argues that the Order is unclear and ambiguous with respect to the items of personal property because the language does not specify Layton's duties or the time in which he had to perform such duties. The Order clearly states, however, that the scheduled inventory, business phone number, pre-need files and records were assets included in the sale. The language identifying these assets is not confusing or ambiguous.

In fact, the court cannot glean any other reasonable interpretation for this language.

In addition, Layton's own actions support the court's conclusion that the language of the Order was clear and unambiguous. In Layton's motion for reconsideration filed on January 16, 1996, he did not argue that the Order was unclear or seek a clarification of the language. Instead, he argued that many items including the telephone number and pre-need files do not belong to Southern. If the language of the Order was unclear with respect to items that were to be included in the sale, Layton had ample opportunity to raise the objection at the hearing on January 22, 1996, and he failed to do so.

■ Moreover, the fact that the Order does not state that Layton must take, or refrain from taking, any action does not mean that he did not have a duty to comply with the Order. The Order states that the sale was to be consummated "on or before January 16, 1996, as to which date time is of the essence." Order of Jan. 3, 1996 at ¶ 12. Layton was the sole operator of the funeral home. In that capacity, he had personal knowledge of and control over the location of all the records, pre-need files and items of inventory listed in the Order. Layton had a duty as operator of Southern to ensure that all these items were in place before the scheduled closing, and he was prohibited from taking any action that would hinder or delay the closing. Accordingly, the court concludes that the Order was clear and unambiguous and that Layton had a duty to refrain from removing any of the items in the Order before the scheduled closing.

### B) Knowledge of the Order

■ The second requirement for establishing civil contempt is a determination that the defendant had knowledge of the order. The defendant's knowledge of the order must be sufficient to put him on notice of the proscribed conduct. *Village Craftsman*, 160 B.R. at 748 (citations omitted). The notice must provide "fair warning that certain acts are forbidden [or required]; [and] any ambiguity in the law should be resolved in favor of the party charged with contempt." *Id.* (quoting *United States on Behalf of I.R.S. v.*

*Norton,* 717 F.2d 767, 774 (3d Cir.1983); *Christie,* 465 F.2d at 1006)).

■ In the present case, Layton had sufficient knowledge of the Order to determine that he was prohibited from hindering or delaying the sale. Layton participated in bidding for the assets on December 4, 1995. Moreover, after the bidding concluded, the parties had agreed upon the assets which would be incorporated and excluded from the sale. The parties agreed that the sale would exclude the trade name "Layton's Home for Funerals," all motor vehicles and several other miscellaneous items or "knickknacks." Layton was also aware that Growney was the successful bidder.

Moreover, after the court authorized the sale, Layton's counsel received a copy of both the initial form of order submitted on December 8, 1995, and the revised form of order submitted on December 20, 1995. Layton objected to the December 8, 1995, form of order on December 15, 1995. The grounds for Layton's objection were based on the precise items that the trustee alleges were missing or accuses Layton of diverting.

The fact that Layton had objected to the inclusion of the records, the pre-need files, the phone number and the inventory items before this court even signed the Order supports the conclusion that Layton knew the contents of the Order. In addition, Layton's motion for reconsideration, which incorporated his objections filed on December 15, 1995, is further evidence that he knew the terms of the Order. Layton knew the terms of the Order, and he was obligated to comply with them.

### C) Defendant Disobeyed Order

The final requirement the plaintiff must prove to establish civil contempt is that the defendant violated the order. *Roe,* 54 F.3d at 137. The trustee argues that Layton violated several terms of the January 3, 1996 Order.

### 1. Phone Number

■ The first allegation is that Layton violated the Order when he had the phone company forward all calls to Southern's business number to a new number for Layton's Home for Funerals. Layton does not dispute the fact that he directed the phone company to forward the calls.

Layton argues, however, that this action did not violate the Order because the phone number was not an asset of Southern, and thus, could not be included in the sale. Layton also contends that he could not have violated this provision of the Order because he had the phone company forward all calls before the court resolved this issue at the hearing on January 22, 1996. This argument is without merit because the Order expressly stated that the business phone number was included in the sale. Layton was required to abide by the terms of the Order despite any objection he may have had. Layton's transfer of the business phone number to the new location of his business after the court ordered that the phone number was sold to Growney was a willful violation of the January 3, 1996 Order.

### 2. Pre–Need Files

■ The trustee argues that Layton also violated the January 3, 1996 Order because he removed the pre-need files from 1022 Lacey Road and contacted the pre-need policyholders. The court has already determined that these files were included in the sale and that Layton contacted the pre-need policyholders. Layton again raises the argument that he did not violate the Order because he removed the files before the court resolved this issue at the hearing on January 22, 1996. This argument is also without merit because the Order expressly included the pre-need files in the sale and Layton was required to abide by its terms from the date it was signed.

■ Layton also argues that he was forced to remove the pre-need files at the direction of the State Association of Funeral Directors and that if he did not contact the pre-need policyholders he would be violating state law. This argument is also without merit. First of all, the court determined at the hearing on January 31, 1996 that Layton waived any objection regarding state law obligations on funeral directors because he failed to raise such an objection in a timely manner before the Order was entered, or even on the motion for reconsideration.

Moreover, the timing and circumstance of the communication from the State Association of Funeral Directors strongly suggests that Layton contacted that organization after the Order was entered, and even after the hearing on his motion for reconsideration, to solicit an opinion from the organization as an excuse for disobeying the Order. Lastly, even if the Order had been at odds with any state law, "defiance of an order prior to a judicial determination of its invalidity will nevertheless constitute contempt." *Edgehill,* 68 B.R. at 416 (citing *United States v. Stine,* 646 F.2d 839, 845 (3d Cir.1981)). *See also Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975) (noting that "[i]f a person to whom a judge directs an order believes that order is incorrect, the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."). Thus, Layton was required to comply with the Order despite any allegedly contrary statutory duty. Layton's removal of the pre-need files was a willful violation of the January 3, 1996 Order.

### 3. Funeral Records

■ The trustee also claimed that Layton violated the Order because he failed to produce the records of the funeral home. Layton argued, however, that the records were partially destroyed in a flood that occurred in his home on November 11–14, 1995. Although the other evidence on this motion make Layton's allegations about the destruction of Southern's records in this flood suspect, the court accepts those allegation for purposes of this motion. The court finds, however, that to the extent that some of the records were not destroyed, Layton willfully violated the Order because he knew the records were included in the sale and failed to produce them until the trustee was compelled to bring this motion.

### 4. Missing Inventory

■ The final contention made by the trustee is that Layton violated the Order because many items listed on the inventory sheet were missing. Layton claims that he did not violate the Order with respect to these items because a genuine dispute existed regarding the items included in the sale.

The court has already determined that the language of the Order clearly set forth all the items to be included in the sale. All the items were listed by room in the funeral home and unambiguously described. The only conceivable dispute over the items listed are items of minimal or no value that were referred to as "knickknacks" by Layton's counsel at the December 4, 1995, hearing. It was Layton's responsibility, however, to provide a list of these items. At the December 4, 1995, hearing, Layton's counsel stated that he would submit a list of the items that were "knickknacks." The list was never provided despite several opportunities to do so. Layton filed an objection to the Order and a motion for reconsideration without supplying a list or any other competent evidence of the precise "knickknacks" which allegedly belonged to him. It was not until Layton received Growney's list of items that were allegedly missing from the premises that he chose to furnish an explanation.

■ Moreover, Layton's counsel asserted at the hearing on December 4, 1995, that the list of items not agreed upon were insignificant. The only potential dispute was therefore limited to insignificant items. Some of the items claimed to be missing, however, appear to be of significant value. The trustee claims that there is evidence that the total value of missing items is considerably more than $20,000. Thus, the court finds that there was no timely dispute raised regarding any items of significant value that were to be included in the sale. The court determines that the term "significant" means in this context having a value which would affect the purchase price Growney agreed to pay.

■ Layton also asserts that he did not have an adequate opportunity to review the items listed on the exhibit. Although the inventory sheet was not available at the December 4, 1995, hearing, Layton and his counsel had ample opportunity to review the list. The trustee provided a copy of the list to Layton's counsel immediately following the hearing with instructions to provide any feedback before December 8, 1995. On December 7, 1995, the trustee faxed Layton's

counsel notifying him that he was going to submit the proposed order the following day with or without his comments. Layton's counsel did not respond to the trustee's request.

Moreover, Layton also had an additional five days after the proposed Order was submitted to object to its contents. As mentioned, however, it was not until this motion was filed by the trustee that Layton provided a detailed list of the whereabouts of the missing items. It is remarkable that Layton had a copy of the inventory list for almost two months after the sale occurred before he provided the court with an explanation of items he claims did not belong to Southern. The court therefore concludes that to the extent that it is subsequently determined that Layton removed any of the missing assets after entry of the Order, such removal was a willful violation of the Order.

### IV. Sanctions

The court may impose various types of sanctions in response to civil contempt. It may, for example, award compensatory damages to the aggrieved party or impose a fine or damages to enforce compliance. *McDonald's*, 727 F.2d at 87. Moreover, an award of attorneys fees may also be authorized when a civil contempt action is based on willful disobedience of a court order. *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Ass'n*, 660 F.2d 76, 84 (3d Cir.1981).

In the present case, Layton must compensate the debtor's estate for the total amount of damages resulting from his conduct. The estate has suffered because it was forced to reduce the sale price of Southern's personal property and has incurred attorney's fees for bringing this motion. As a result, the court holds that Layton must reimburse the estate for the reduction in the sale price of the personal property, the attorney's fees and the expenses incurred by the estate in negotiating the modified sale terms based upon the missing items and in bringing this motion.

In determining the reduction in the sale price, however, the trustee must exclude the value of any missing caskets. After the bidding concluded on December 4, 1995, both Growney and the trustee acknowledged on the record that caskets are usually held on consignment. Thus, they knew before the bidding that the caskets were not included in the sale.

### CONCLUSION

Based on the foregoing, this court finds that Layton willfully disobeyed the January 3, 1996 Order, and he therefore must compensate the debtor's estate for the resulting reduction in the purchase price, the trustee's attorneys fees and any resulting expenses. Counsel for the trustee is to submit an appropriate order within seven days, and is to arrange a phone conference to schedule further proceedings for the determination of damages.